1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOREN LAMONTE' QUALLS,<br><br>                    Plaintiff,<br><br>        v.<br><br>THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, a California Corporation; UNIVERSITY OF CALIFORNIA, MERCED; MARK YUDOF, President of the Regents of the University of California; STEVE KANG, Chancellor, University of California, Merced; SAM TRAINA, Executive Vice-Chancellor, University of California, Merced; ROBERT OSCHNER, Individually; and DOES 1-10, inclusive,<br><br>                    Defendants. | Case No. 1:13-cv-00649-LJO-SMS<br><br>ORDER REQUIRING PLAINTIFF EITHER TO FILE AN AMENDED COMPLAINT OR NOTIFY THE COURT OF HIS WILLINGNESS TO PROCEED ONLY ON CLAIMS FOUND TO BE COGNIZABLE<br><br><br>(Doc. 8) |

**<u>Screening Order</u>**

Plaintiff Loren L. Qualls ("Plaintiff") filed a First Amended Complaint (FAC) on July 31, 2013. Doc. 8. The individual Defendants are Mark Yudof, President of the Regents of the University of California; Steve Kang, Chancellor of UC Merced; Sam Traina, Executive Vice-Chancellor; and Robert Oschner. The suit also names the Regents of the University of California, UC Merced, and Does 1-10 inclusive.

The Court dismisses, without prejudice, Plaintiff's claims for intentional infliction of emotional distress, defamation, violations of "California equal employment law," and violations of 42 U.S.C. §§ 1985 and 1986. Within 30 days, Plaintiff must either file an amended complaint curing the deficiencies in these claims or notify the Court of his willingness to proceed without them.

Plaintiff is reminded that a claim must state facts supporting allegations as to the harm caused by each defendant. Because an amended complaint supersedes the previous complaint, the Court cannot consider facts in a previous complaint.

**I.   Screening Standard**

Under 28 U.S.C § 1915(e)(2), the Court must screen all complaints brought *in forma pauperis* or by prisoners. *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000). The Court must dismiss the complaint or any portion of it that is "frivolous," "malicious," "fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

A complaint is frivolous "when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992). A complaint is malicious if not pled in good faith. *Kinney v. Plymouth Rock Squab. Co.*, 236 U.S. 43, 46 (1915). A complaint's failure to state a claim is defined in Fed.R.Civ.P. 12(b)(6), in that it does not satisfy the pleading standards in Fed.R.Civ.P. 8. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). This screening for failure to state a claim is cumulative of, and not a substitute for, any subsequent Rule 12(b)(6) motion that the defendant may choose to bring. *Teahan v. Wilhelm*, 481 F. Supp. 2d 1120 (S.D. Cal. 2007).

**II.   Pleading Standards**

Under Fed. R. Civ. P. 8(a), a pleading that states a claim for a relief must include a statement demonstrating the Court's jurisdiction, "a short and plain statement of the claim showing the pleader is entitled to relief; and . . . a demand for the relief sought, which may include relief in the alternative or different types of relief." It must give the defendant fair notice of the claims against him and state their elements plainly and succinctly. *Jones v. Cmty. Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984); *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). The Supreme Court noted,

> The pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement. … [¶] [A] complaint must contain sufficient factual matter, accepted as true, to … allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

1  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted).

2  Although a court assumes the truth of well-pled factual allegations, legal conclusions are not entitled

3  to the same assumption of truth. *Id.*

4        If the Court determines that the complaint fails to state a cognizable claim, the Court may

5  grant leave to amend to the extent the deficiencies can be cured. *Lopez v. Smith*, 203 F.3d 1122,

6  1127-28 (9th Cir. 2000) (en banc) (the "rule favoring liberality in amendments to pleadings is

7  particularly important for the *pro se* litigant") (*quoting Noll v. Carlson*, 809 F.2d 1446, 1448 (9th

8  Cir.1987)). Only if it is "absolutely clear" that the deficiencies could not be cured by amendment

9  should the Court dismiss a *pro se* complaint with prejudice. *Noll*, 809 F.2d at 1448.

10 **III.   Factual Allegations**

11       Plaintiff is an African-American male. ¶2. Beginning January 1, 2008, he was employed as a

12 Lecturer in the Merritt Writing Program, a part of the School of Humanities at UCM. The terms of

13 his employment were governed by a personal services agreement between himself and the Board of

14 Trustees at UCM; the UCM faculty handbook; and "various other written and oral terms and

15 conditions of employment" and applicable state law. ¶5. During his employment, Plaintiff

16 "performed his job responsibilities as lecturer in an exemplary fashion, received favorable

17 performance reviews and otherwise performed each and every condition of employment." *Id.*

18       On or about May 31, 2012, Plaintiff and nine other lecturers (all Caucasian) were advised by

19 their supervisor, Defendant Oschner, that their contracts would not be renewed. ¶¶5-6. Oschner

20 explained that this was due to a $600,000 budgetary shortfall that the Merritt Writing Program was

21 having at the time. ¶6. When he received this notice, Plaintiff was not offered a transfer to other

22 departments at UCM. ¶6. Subsequently, however, the nine other lecturers were either reappointed as

23 lecturers or were offered other positions at UCM. *Id.* A decision was made not to reappoint Plaintiff,

24 despite his being qualified for reappointment. ¶¶5, 8. Although no details regarding this decision are

25 described in the FAC, Plaintiff did on August 27, 2011 email Oschner to ask that this decision be

26 reviewed. *Id.* He received no reply. *Id.*

27       In fact, UCM had no budgetary problem, and Oschner's true reason for initially not renewing

28 the ten lecturers' contracts was not a $600,000 budget shortfall. ¶6. Although the FAC does not

suggest what the real reason was for this, it does allege that Defendants were motivated by Plaintiff's race and ethnicity in deciding not to offer him a transfer in May 2012 as well as in their decision not to rehire or transfer him with the other lecturers. ¶¶6-7. Plaintiff adds that the UCM School of Humanities currently has no African-Americans (and also that "UCM and its School of Humanities" has a "proportionately small number" of African-American faculty; this only makes sense if it is taken to refer to UCM only). ¶7.

Plaintiff supplies additional allegations under the "Fourth Cause of Action" for defamation. Defendants "made untrue statements to Plaintiff's prospective employers, and co-workers, alleging, among other things, that he was not reappointed to his job as a lecturer for Defendants, in the Merritt Writing Program, due to 'poor performance,' 'dishonesty,' and 'insubordination'." ¶27. Plaintiff does not allege these facts as to his NIED and IIED claims.

Plaintiff filed a timely charge of discrimination with the EEOC. ¶16.[1]

**IV.   Analysis**

In screening the original complaint, the Court dismissed with prejudice Plaintiff's claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and violation of First Amendment rights by UCM. The Court also dismissed, without prejudice, Plaintiff's claims for defamation, intentional infliction of emotional distress (IIED), and negligent infliction of emotional distress (NIED).

The FAC re-alleges these last three claims, as well as the claim of Title VII discrimination, which was cognizably pled in the original complaint. Plaintiff also alleges new claims, for violations of 42 U.S.C. 1981, 1983, 1985, and 1986. The Court analyzes these eight claims below.

The remaining claims in the FAC are not clearly identified. In this regard the FAC resembles the original complaint, which stated an NIED claim in the caption but not in the body, seemed to omit claims or else did not number them consecutively, identified "Doe" defendants but alleged no facts against them, and interrupted the final claim mid-sentence to present damages.

---

[1] The exhibits to the original complaint show that Plaintiff filed this complaint sometime in 2011, and that he then received his right-to-sue letter. However, the Court cannot consider material that is not alleged in or attached to the FAC.

4

The FAC purports to state a cause of action for a violation of "California Equal Employment Law." But the FAC does not identify this law, nor does it indicate how Defendants' conduct violated this law. The Court informs Plaintiff that a publicly-available description of California's discrimination laws appears on the website of the California Department of Justice.[2] As the DOJ explains, the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.) is California's "primary law prohibiting discrimination in employment." The Court will analyze whether the complaint states a FEHA claim.[3]

Also, the FAC's "First Cause of Action" does not appear to state a cause of action at all, but seems intended as Plaintiff's statement of facts. Its caption refers generally to "unlawful discrimination based upon race and ethnicity," and on three separate occasions this section (or the preceding material) adverts to a list of legal provisions, many of which turn out to be independent causes of action later in the FAC. These lists thus appear to be "overviews" of the claims stated in the entire complaint. Complicating this assessment, however, is the fact that these three "overviews" of the complaint are not identical. Two of them identify legal provisions that are *not* later designated as independent causes of action. One of these refers to 42 U.S.C. 1981A and 1988. Neither statute creates a cause of action. Another refers to "42 U.S.C. 1085," which can only be a typo. The Court concludes that the FAC's "First Cause of Action" was not meant to identify any cause of action.

Finally, the FAC contains a section with the caption "miscellaneous allegations." ¶51-52. These are not incorporated into any claim for relief, and the Court is unable to determine the exact nature or purpose of these allegations.

A.     **Employment Discrimination (Title VII)**

Plaintiff alleges discrimination by Defendants UCM and Regents because of his race, color, and national origin, in violation of Title VII. In screening the original complaint, the Court found that Plaintiff has stated cognizable claims for discrimination on under two theories, hostile work environment and wrongful termination. The FAC focuses on wrongful termination, omitting the

---

[2] Available at http://oag.ca.gov/publications/CRhandbook/ch2
[3] In addition, "FEHA's provisions prohibiting discrimination may provide the policy basis for a claim for wrongful discharge in violation of public policy." *Phillips v. St. Mary Regional Medical Center*, 96 Cal.App.4th 218, 227 (2002). "The same framework of analysis applies to a claim under FEHA as a claim for wrongful employment termination in violation of public policy." *Graves v. Johnson Controls World Servs., Inc.*, 271 F. App'x 598, 601 (9th Cir. 2008). The Court assumes, without prejudice, that Plaintiff does not allege this theory.

facts which supported the hostile work environment claim. (These were not, however, irrelevant to a wrongful termination claim, and need not have been omitted in the FAC.)

To establish federal subject matter jurisdiction, a plaintiff must exhaust his administrative remedies by filing a timely charge with the EEOC, thereby allowing the agency time to investigate the charge. *See* 42 U.S.C. § 2000e-5(b); *Lyons v. England*, 307 F.3d 1092, 1103-04 (9th Cir. 2002). Plaintiff alleges that he has done this, and has enclosed his right-to-sue letter from the EEOC.

Section 703(a) (1) of Title VII provides that it is "an unlawful employment practice" for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e–2(a)(1). Title VII defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees ... and any agent of such person." 42 U.S.C. § 2000e(b). Employees and supervisors cannot be held liable as individuals under this definition. *Miller v. Maxwell's Intern. Inc.,* 991 F.2d 583, 587 (9th Cir.1993) ("[It] is inconceivable that Congress intended to allow civil liability to run against individual employees"); *Holly D. v. California Institute of Technology*, 339 F.3d 1158, 1179 (9th Cir. 2003); *Pink v. Modoc Indian Health Project, Inc.*, 157 F.3d 1185, 1189 (9th Cir. 1998).

The complaint need not contain specific facts establishing a prima facie case of discrimination under the framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973); it need only contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2); *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508 (2002). To state a prima facie wrongful termination claim, Plaintiff must plead that (1) he was a member of a protected class; (2) he was performing his job in a satisfactory manner; (3) he suffered an adverse employment action; and (4) other similarly-situated employees who were not members of the protected class were treated more favorably. *Aragon v. Republic Silver State Disposal, Inc.,* 292 F.3d 654, 659 (9th Cir.2002).

Plaintiff alleges membership in a protected class. He also states he performed his job in a satisfactory manner. (The original complaint notes that he received a "three out of four" for his portfolio but the FAC omits this detail.) Defendants declined to reappoint Plaintiff to their faculty,

6

1    although they did reappoint nine similarly situated white employees. Based on these allegations,

2    Plaintiff may proceed with his wrongful termination claim.

3         **B.**     **Employment Discrimination (FEHA)**

4         To state a claim for discrimination under FEHA, a plaintiff must allege that: "(1) he was a

5    member of a protected class, (2) he ... was performing competently in the position he held, (3) he

6    suffered an adverse employment action, such as termination, ... and (4) some other circumstance

7    suggests discriminatory motive." *Guz v. Bechtel Nat'l Inc.,* 24 Cal.4th 317, 355, 100 Cal.Rptr.2d

8    352, 8 P.3d 1089 (2000) (citation omitted). For the same reasons underlying Plaintiff's Title VII

9    claim, he has stated these elements of a claim for employment discrimination under FEHA.

10        However, a plaintiff who seeks to bring a FEHA action must first exhaust his administrative

11   remedies. *Romano v. Rockwell Int'l Inc.,* 14 Cal.4th 479, 492 (1996). In order to exhaust

12   administrative remedies, a plaintiff must file a complaint with the DFEH within one year from the

13   date upon which the alleged unlawful conduct occurred. Cal. Gov't Code § 12960(b) & (d). The

14   DFEH must issue a right-to-sue letter upon completion of its investigation of the complaint and not

15   later than one year after the initial filing of the complaint. *Id.* § 12965(b). The plaintiff must

16   ordinarily obtain a right to-sue letter to bring a FEHA claim. *Romano,* 14 Cal.4th at 492 (to exhaust

17   administrative remedies, an employee must file a complaint with DFEH and receive a DFEH right-

18   to-sue notice).

19        What effect California law accords the filing of an administrative complaint with the EEOC

20   is not settled, but federal district courts in California have considered whether the EEOC charge puts

21   the EEOC on notice to cross-file the claim. *Reed v. UBS Sec., LLC*, 2010 WL 3119200 (N.D. Cal.

22   Aug. 3, 2010) (Plaintiff's general cross-file request and factual summary in the charge were

23   sufficient to put the EEOC on notice to cross-file her charge with the DFEH); *Barnes v. Hershey*

24   *Co.*, 2012 WL 5412031 (N.D. Cal. Nov. 6, 2012) (DFEH was not put on notice; "Plaintiffs do not

25   claim the DFEH ever communicated with them about their claims ... Nothing in the EEOC Charge of

26   Discrimination suggested that the EEOC charge should have been cross-filed with the DFEH");

27   *McCarthy v. R.J. Reynolds Tobacco Co.*, 819 F. Supp. 2d 923, 935 (E.D. Cal. 2011).

28

          7

1   Here, the FAC contains no allegation that the requirement to file a complaint with the DFEH

2   was satisfied, either actually or constructively as described above. This cause of action is therefore

3   dismissed without prejudice. If Plaintiff chooses to reallege his "California Equal Employment Law"

4   claim, he should identify the claim explicitly (whether as a FEHA claim or otherwise); and if a

5   FEHA claim, he should indicate how he satisfied the exhaustion requirement by including more

6   specific allegations regarding the content of his EEOC complaint or of his DFEH complaint if any.

7   **C.      Intentional Infliction of Emotional Distress**

8        The elements of an IIED claim are: (1) defendant's outrageous conduct; (2) defendant's

9   intention to cause, or reckless disregard of the probability of causing, emotional distress; (3)

10   plaintiff's suffering severe or extreme emotional distress; and (4) an actual and proximate causal link

11   between the tortious (outrageous) conduct and the emotional distress. *Cole v. Fair Oaks Fire*

12   *Protection Dist.*, 43 Cal.3d 148, 155, n. 7 (1987). To be "outrageous," the conduct must be "so

13   extreme as to exceed all bounds of that usually tolerated in a civilized community." *Davidson v. City*

14   *of Westminster*, 32 Cal.3d 197, 209 (1982) (quoting *Cervantez v. J.C. Penney Co.*, 24 Cal.3d 579,

15   593 (1979)). Liability does not extend to mere insults, indignities, threats, annoyances, petty

16   oppressions, or other trivialities. *Fisher v. San Pedro Peninsula Hosp.*, 214 Cal.App.3d 590, 617

17   (1989). "Severe emotional distress" means "emotional distress of such substantial quality or

18   enduring quality that no reasonable [person] in civilized society should be expected to endure it."

19   *Potter*, 6 Cal.4th at 1004. It means "highly unpleasant mental suffering or anguish 'from socially

20   unacceptable conduct' . . . , which entails such intense, enduring and nontrivial emotional distress

21   that 'no reasonable [person] in a civilized society should be expected to endure it.'" *Schild v. Rubin*,

22   232 Cal.App.3d 755, 762-763 (1991) (citations omitted).

23        Under California law, a public entity cannot be liable for common law torts unless

24   specifically authorized by statute. CAL. GOV'T CODE § 815(a); *Milosky v. Regents of the Univ. of*

25   *Cal.*, 44 Cal. 4th 876, 900-01 (Cal. 2008). However, a public entity may be found vicariously liable

26   for employees' tortious acts. CAL. GOV'T CODE § 815.2; *Davison v. Santa Barbara High Sch.*

27   *Dist.*, 48 F. Supp. 2d 1225, 1232 (C.D. Cal. 1998). To prevail on his IIED claim, Plaintiff must prove

28   that an individual employee is liable for IIED.

In the original complaint, the basis for the IIED claim was Defendant's failure to repair a broken window. The Court dismissed this claim with leave to amend because it was ambiguous whether Plaintiff had to work "under, and in broken glass." In the FAC, the IIED claim now refers to the above-mentioned discriminatory termination of Plaintiff.

The FAC alleges that Plaintiff was not re-hired due to his race. As a matter of law, what Plaintiff alleges is not sufficiently outrageous conduct. *Cf. Cochran v. Cochran*, 76 Cal. Rptr. 2d 540, 544-45 (Cal. Ct. App. 1998) ("[M]ajor outrage is still essential to the tort [of IIED]; and the mere fact that the actor knows that the other will regard the conduct as insulting, or will have his feeling [sic] hurts, is not enough.") (quotations and citation omitted); *Hegelson v. American Int'l Grp., Inc.*, 44 F. Supp. 2d 1091, 1095 (S.D. Cal. 1999) ("not enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice', or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort"; for liability, conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community") (citing *Cochran*, 76 Cal. Rptr. 2d at 545) (quotations and citation omitted); *Alcorn v. Anbro Eng'g, Inc.*, 2 Cal. 3d 493, 496-97 (Cal. 1970) (holding a black plaintiff's IIED claim survives demurrer where plaintiff's supervisor violently and repeatedly shouted an obscene racial epithet before firing him).

Plaintiffs claim for IIED is dismissed without prejudice.

**D.    <u>Negligent Infliction of Emotional Distress</u>**

NIED is a form of the tort of negligence, to which the elements of duty, breach of duty, causation and damages apply. *Huggins v. Longs Drug Stores California, Inc.*, 6 Cal.4th 124, 129 (1993). California law recognizes that "there is no independent tort of negligent infliction of emotional distress" in that "[t]he tort is negligence, a cause of action in which a duty to the plaintiff is an essential element." *Potter*, 6 Cal.4th at 984. The existence of a duty is a question of law. *Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc.,* 48 Cal.3d 583, 588 (1989). NIED includes "at least two variants of the theory" – "bystander" cases and "direct victim" cases. *Wooden v. Raveling*, 61 Cal.App.4th 1035, 1037 (1998). A right to recover for emotional distress as a "direct

victim" arises from the breach of a duty that is assumed by the defendant or imposed on the

defendant as a matter of law, or that arises out of the defendant's preexisting relationship with the

plaintiff. *Burgess v. Superior Court*, 2 Cal.4th 1064, 1073-1074 (1992); *Marlene F.*, 48 Cal.3d at

590. In "direct victim" cases, "well-settled principles of negligence are invoked to determine

whether all elements of a cause of action, including duty, are present in a given case." *Burgess*, 2

Cal.4th at 1073. "[U]nless the defendant has assumed a duty to plaintiff in which the emotional

condition of the plaintiff is an object, recovery is available only if the emotional distress arises out of

the defendant's breach of some other legal duty and emotional distress is proximately caused by that

breach of duty." *Potter*, 6 Cal.4th at 985.

In stating his claim for NIED, Plaintiff refers to the failure of all defendants to "exercise due

care in the performance of their duties and obligations to Plaintiff, including the failure to f the

Defendants to end the harassment of Plaintiff as well as the specific participation of Plaintiff's

superior in the harassment." This claim is inconsistent with the facts described above, inasmuch as

the facts present a wrongful termination and do not describe any harassment of Plaintiff.

Furthermore, "sovereign immunity extends to state agencies and to damage claims against

state officials acting in their official capacity." *Braunstein v. Arizona Dept. of Transp.,* 683 F.3d

1177, 1188 (9th Cir.2012). "Sovereign immunity is applicable to ... supplemental state law claims."

*Ranton–Ried v. Alcazar,* 2007 WL 2669714, at *2 (D.Or. Sept. 7, 2007). For this reason, Plaintiff's

NIED claim cannot proceed except to the extent that it is limited to non-monetary relief or to the

extent that it seeks monetary relief from individual defendants in their individual capacities.

Although the Court does not dismiss the claim, Plaintiff may choose to clarify this claim

either by including facts showing how he was "harassed" or by omitting this assertion and replacing

it with whatever facts do form the basis for his NIED claim.

### E.   **Defamation**

Plaintiff's next cause of action alleges defamation by all Defendants, who "made untrue

statements to Plaintiff's prospective employers, and co-workers, alleging, among other things, that

he was not reappointed to his job as a lecturer for Defendants, in the Merritt Writing Program, due to

"poor performance," "dishonesty," and "insubordination". ¶27.

"Defamation is an invasion of the interest in reputation. The tort involves the intentional publication of a statement of fact which is false, unprivileged, and has a natural tendency to injure or which causes special damage." *Ringler Associates Inc. v. Maryland Cas. Co.*, 80 Cal.App.4th 1165, 1179 (2000). To state a claim for defamation, Plaintiff must show the intentional publication of a statement of fact that is false, unprivileged, and has a natural tendency to injure or which causes special damage. *Smith v. Maldonado,* 72 Cal.App.4th 637 (1999). Defamation may be any publication which would "tend to injure [the] person in his or her business or profession, or otherwise cause actual damage." *Rothman v. Jackson,* 49 Cal.App.4th 1134, 1140 (1996).

The defamatory statement must be specifically identified, and the plaintiff must plead the substance of the statement. *Jacobson v. Schwarzenegger*, 357 F.Supp.2d 1198, 1216 (C.D.Cal. 2004). Even under the liberal federal pleading standards, "general allegations of the defamatory statements" that do not identify the substance of what was said are insufficient. *See Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F.Supp. 1303, 1314 (N.D.Cal.1997) (holding that "the words constituting a libel or slander must be specifically identified, if not pleaded verbatim").

A judge in this district has previously found that a claim was stated where defendants "published false information about plaintiff's performance and falsely accused plaintiff of dishonesty and lack of integrity." *See Scott v. Solano Cnty. Health & Soc. Servs. Dep't*, 459 F. Supp. 2d 959, 973 (E.D. Cal. 2006). The Court explained that these allegations, though terse, "provide[ed] defendants sufficient notice of the issues to enable preparation of a defense." *Id. Scott*, however, preceded the United States Supreme Court's rulings in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and in *Iqbal*, *supra*. After *Iqbal*, Courts first ignore conclusory allegations and then "determine the facial plausibility of the non-conclusory factual allegations," and "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679.

Plaintiff here alleges the substance of the defamatory statements with the words "poor performance," "dishonesty," and "insubordination." However, in other respects the defamation claim fails to allege more than the "mere possibility of misconduct" and must be dismissed without

11

prejudice. If Plaintiff wishes to reallege this claim, he should plead more specific facts. For example, he might allege the identity of the persons who defamed him (or identify them as "Does," if they are unknown); he might allege what was said about him in more detail; he might allege who was informed of these allegations; he might allege a timeframe in which these defamatory statements were made; he might allege how he knows that these defamatory statements were made.

### F.   Section 1981 Claim

Section 1981 of the Civil Rights Act of 1866 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens." *Johnson v. Lucent Technologies Inc.,* 653 F.3d 1000, 1005–08 (9th Cir.2011) (quoting 42 U.S.C. § 1981(a)). A § 1981 claim is sufficient to withstand a motion to dismiss if it alleges that plaintiff suffered discrimination in employment on the basis of race. *Jones v. Bechtel,* 788 F.2d 571, 574 (9th Cir.1986). Analysis of a § 1981 employment discrimination claim follows the same legal principles as those applicable in a Title VII discrimination case. *See Metoyer v. Chassman,* 504 F.3d 919, 930 (9th Cir.2007) (setting forth § 1981 discrimination requirements).

However, the Eleventh Amendment bars damages claims pursuant to 42 U.S.C. §§ 1981, 1983, 1985 and 1986 brought against the Regents, the University, and its employees acting in their official capacity. *See Vaughn v. Regents of Univ. of California*, 504 F. Supp. 1349, 1352 (E.D. Cal. 1981); *Braunstein v. Ariz. Dep't of Transp.,* 683 F.3d 1177, 1188 (9th Cir.2012) (stating that the law is well-settled that § 1981 does not abrogate the states' sovereign immunity); *Pittman v. Oregon, Emp't Dep't,* 509 F.3d 1065, 1074 (9th Cir.2007) (finding that § 1981 does not contain a cause of action against states); *Mitchell v. L.A. Cmty. Coll. Dist.,* 861 F.2d 198, 201 (9th Cir.1988) (holding that the Los Angeles Community College District was entitled to Eleventh Amendment immunity from the plaintiff's § 1981 claims).

The FAC does not specify whether persons are sued in their individual or official capacities. To the extent that Plaintiff seeks injunctive relief, this claim may proceed. However, damages may only be sought from persons in their individual capacities. With these limitations, the claim may proceed.

### G.    Section 1985 Claim

A claim brought for violation of section 1985(3) requires "four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992) (citation omitted). A racial, or perhaps otherwise class-based, invidiously discriminatory animus is an indispensable element of a section 1985(3) claim. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 989 (9th Cir. 2001) (quotations and citation omitted). As stated above, the Eleventh Amendment limits any claim for damages to defendants in their individual capacity.

A claim for violation of section 1985(3) requires the existence of a conspiracy and an act in furtherance of the conspiracy. *Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005) (citing *Sever* at 1536). The statute defines conspiracy as requiring "two or more persons." A mere allegation of conspiracy is insufficient to state a claim. *Holgate*, 425 F.3d at 676-77. Here, Plaintiff alleges that the conspiracy was committed by "Oschner, and DOE 1-10." ¶39. However, the complaint contains no specific allegations against any Doe defendants.

"As a general rule, the use of 'John Doe' to identify a defendant is not favored." *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). Nonetheless, a plaintiff must be afforded an opportunity to identify the unknown defendants through discovery, unless it is clear that discovery will not reveal their identities or the complaint must be dismissed for other reasons. *Id.* When a Plaintiff is not able to name one or more Defendants when she files her complaint, she must provide sufficient information to enable the court and her opponents to know whom she is trying to identify. *See, e.g., Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 390 n. 2 (1971) (in which "the District Court ordered that the complaint be served upon 'those federal agents who it is indicated by the records of the United States Attorney participated in the November 25, 1965, arrest of the petitioner'"); *Wakefield v. Thompson*, 177 F.3d 1160, 1162 n. 4 (9th Cir. 1999) (although the plaintiff did not know the name of the officer who refused to provide the plaintiff's

1  prescription when releasing plaintiff on parole, the plaintiff informed the Court that the name could

2  be secured "by inspecting the 'parole papers that the plaintiff signed at the time of his release' and

3  the 'Duty Roster for that day'").

4       If Plaintiff determines that it is necessary to include Doe defendants, he should plead

5  additional facts relating to them as described above. However, at present the FAC contains no

6  allegations relating to Doe Defendants. For this reason, Plaintiff cannot state a claim of conspiracy

7  between Oschner and Doe defendants. This claim is dismissed without prejudice.

8       **H.**     <u>**Section 1986 Claim**</u>

9       "Section 1986 imposes liability on every person who knows of an impending violation of

10  section 1985 but neglects or refuses to prevent the violation." *Karim–Panahi v. Los Angeles Police*

11  *Dept.*, 839 F.2d 621, 626 (9th Cir.1988). A violation of section 1986 thus depends on the existence

12  of a valid claim under 1985. *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1040 (9th Cir. 1990).

13  Because Plaintiff has not pled a conspiracy under 1985, his 1986 claim cannot proceed. The statute

14  of limitations may also be an issue. Section 1986 provides, in part, that "no action under the

15  provisions of this section shall be sustained which is not commenced within one year after its cause

16  of action has accrued." *See Solis v. Cnty. of Los Angeles*, 514 F.3d 946, 953 (9th Cir. 2008);

17  *Greenfield v. Safeway Stores, Inc.*, 1988 WL 156768 (D.D.C. July 14, 1988) (one year begins when

18  knowledge that cause of action accrued, despite filing EEOC claim). Without addressing the issue of

19  the statute of limitations in this order, the Court dismisses the §1986 claim without prejudice. If

20  Plaintiff wishes to allege this claim, he must state a valid §1985 claim. Furthermore, due to

21  sovereign immunity, this claim may only be stated against persons in their individual capacities.

22  / / / /

23  / / / /

24  / / / /

25

26

27

28

**I.     Section 1983 Claim**

To establish a violation of 42 U.S.C. § 1983, plaintiff must prove that defendants acted under color of state law and deprived Plaintiff of her constitutional rights. West v. Atkins, 487 U.S. 42, 48 (1988).

**Immunity**

In its previous screening order, the Court informed Defendant that:

Under the Eleventh Amendment, the State of California and its official arms are immune from suit under 42 U.S.C. § 1983 in federal court. *See Howlett v. Rose,* 496 U.S. 356, 365 (1990). The University of California and the Board of Regents are considered to be instrumentalities of the state for purposes of the Eleventh Amendment. *See Jackson v. Hayakawa,* 682 F.2d 1344, 1350 (9th Cir.1982); *see also Hong v. Grant,* 403 F. App'x 236, 237 (9th Cir. 2010) (unpublished); 28 U.S.C. § 1915(e)(2)(B)(iii) ("the court shall dismiss the case at any time if the court determines that the action or appeal seeks monetary relief against a defendant who is immune from such relief").

In light of Eleventh Amendment immunity, Plaintiff cannot state a cognizable Fourteenth Amendment claim against the University or the Board of Regents. This claim may only be alleged against the personal defendants in their individual capacities.

**Fourteenth Amendment Equal Protection**

"The central purpose of the Equal Protection Clause of the Fourteenth Amendment is the prevention of official conduct discriminating on the basis of race." *Washington v. Davis,* 426 U.S.229, 239 (1976). A claim under 42 U.S.C. § 1983 for violation of the Equal Protection Clause requires a showing of purposeful discrimination. *See e.g., Crawford–El v. Britton,* 523 U.S. 574 (1998). A plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class. *Barren v. Harrington,* 152 F.3d 1193, 1194 (9th Cir.1998) (citing *Washington v. Davis,* 426 U.S. at 239–40).

Plaintiff has pled that Defendants' decision not to reappoint Plaintiff was based impermissible extent on his race, color, and national origin. Plaintiff may proceed with this claim against the individual Defendants.

/ / / /

15

**Fourteenth Amendment Due Process**

In order to make out a claim of deprivation of Fourteenth Amendment due process rights, a plaintiff must demonstrate first that he had been deprived of liberty or property in the constitutional sense and then that the procedure used to deprive him of that interest was constitutionally defective. *Gibson v. Merced Cnty. Dep't of Human Res.*, 799 F.2d 582, 586 (9th Cir. 1986). Thus, a threshold requirement to a substantive or procedural due process claim is the plaintiff's showing of a liberty or property interest protected by the Constitution. *Stiesberg v. State of Cal.*, 80 F.3d 353, 356 (9th Cir. 1996). Here, Plaintiff does not identify the interest at issue. The Court infers from the tenor of the claim that the property interest in question is Plaintiff's employment. However, the Court notes that dismissal from government employment may implicate a liberty interest in reputation if the dismissal is for dishonesty, moral turpitude, or other reasons bearing such stigmata as might foreclose other employment opportunities. *Roley v. Pierce County Fire Protection Dist. No. 4,* 869 F.2d 491, 495 (9th Cir.1989).

A plaintiff only has a constitutionally protected property interest in his continued employment if he has a "reasonable expectation or a legitimate claim of entitlement to it, rather than a mere unilateral expectation." *See Brady v. Gebbie,* 859 F.2d 1543, 1548 (9th Cir.1988). Legitimate claims of entitlement are created by existing rules or understandings that stem from an independent source such as state laws, statutes, ordinances, regulations or express or implied contracts. *Roth,* 408 U.S. 577. The Court looks to California law to determine whether Plaintiff had a legitimate claim of entitlement to his job that could give rise to a procedural due process claim under federal law. *See San Bernardino Physicians' Servs. Med. Grp., Inc. v. San Bernardino Cnty.,* 825 F.2d 1404, 1408–09 (9th Cir.1987) (although the underlying substantive interest is created by an independent source such as state law, federal constitutional law determines whether that interest rises to the level of a legitimate claim of entitlement protected by the Due Process Clause); *Regents of Univ. of Mich. v. Ewing,* 474 U.S. 214, 223 n. 9 (1985) ("Absent a state statute or university rule or 'anything approaching a common law of re-employment,' however, we held that [a university professor] had no property interest in the renewal of his teaching contract") (citing *Bd. of Regents v. Roth,* 408 U.S.

564, 577 (1972)). Furthermore, "[P]rocedural requirements, without more, do not create constitutionally cognizable property interests." *Clemente v. United States,* 766 F.2d 1358, 1364–65 (9th Cir.1985); *Loehr v. Ventura Cnty. Cmty. Coll. Dist.*, 743 F.2d 1310, 1316 (9th Cir. 1984). Such an interest is created if the procedural requirements are intended as a significant substantive restriction on decisionmaking. *Wedges/Ledges of Cal. v. Phoenix,* 24 F.3d 56, 62 (9th Cir.1994).

Here, Plaintiff alleges that his term of employment was coming to an end, and the issue was whether his employment would be renewed. The FAC contains no allegations suggesting that Plaintiff had any "legitimate claim of entitlement" to the renewal of that contract. *Cf. Brown v. Chinen*, 2008 WL 2073496 (D. Haw. May 14, 2008) ("The terms of Plaintiff's appointment secured no interest in re-employment for the next year. Thus, the terms of the Plaintiff's appointment secured no property interest in employment after the expiration of his contract.") There are also insufficient details to suggest that the procedures provided to appeal non-renewal were "intended to be a significant substantive restriction on decision making."

Plaintiff's due process claim is dismissed without prejudice. If Plaintiff wishes to re-allege this claim, he must plead facts indicating a "legitimate claim of entitlement" rather than a mere "unilateral expectation" to reappointment, or additional facts regarding the decisionmaking process.

**V.    Conclusion**

Plaintiff has pled cognizable claims for Title VII wrongful termination, violations of 42 U.S.C. §§ 1981 and 1983 (equal protection), and the tort of negligent infliction of emotional distress. The Court dismisses, without prejudice, Plaintiff's claims for intentional infliction of emotional distress, defamation, violations of "California equal employment law" (analyzed as FEHA), and violations of 42 U.S.C. §§ 1985 and 1986. The Court will provide Plaintiff with a second opportunity to cure these deficiencies. *See Noll v. Carlson*, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Alternatively, Plaintiff may notify the Court in writing that he does not wish to file a second amended complaint and is agreeable to proceeding with the remaining claims.

If Plaintiff opts to proceed, the Court will dismiss the claims without prejudice. The Court will send Plaintiff instructions for what he must do before the Court can instruct the United States Marshal to effect service upon Defendants. Plaintiff must not attempt service himself.

If Plaintiff opts to amend, his amended complaint should meet the same requirements that applied to his previous complaint: it should be brief, but must state facts supporting allegations as to the harm caused by each defendant. Fed. R. Civ. P. 8(a); *Iqbal*, 556 U.S. at 678. Plaintiff is advised that an amended complaint supersedes the original complaint. *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997); *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987). In addition, an amended complaint must be "complete in itself without reference to the prior or superseded pleading." Local Rule 220. Plaintiff is warned that "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." *King*, 814 F.2d at 567 (citing *London v. Coopers & Lybrand*, 644 F2d 811, 814 (9th Cir. 1981)); *accord Forsyth*, 114 F.3d at 1474. Finally, Plaintiff **may not plead new causes of action**, but may only revise causes of action that he pled in the original or first amended complaints.

Accordingly, it is **HEREBY ORDERED** that:

1. Plaintiff's Complaint is **DISMISSED**, without prejudice;

2. Within **30 days** from the date of service of this order, Plaintiff must either:

    a. File an amended complaint curing the deficiencies identified in this order, or

    b. Notify the Court in writing of his willingness to proceed without the dismissed claims;

3. If Plaintiff fails to comply with this order, the action will be dismissed for failure to obey a court order.

IT IS SO ORDERED.

Dated:   **September 5, 2013**            **/s/ Sandra M. Snyder**
                                     UNITED STATES MAGISTRATE JUDGE