**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOREN LAMONTE' QUALLS,<br><br>Plaintiff,<br><br>v.<br><br>REGENTS OF THE UNIVERSITY OF CALIFORNIA et al.,<br><br>Defendants. | Case No. 1:13-cv-00649-LJO-SMS<br><br>SCREENING ORDER AND FINDINGS AND RECOMMENDATIONS RE: SECOND AMENDED COMPLAINT<br><br>(Doc. 10) |

**Screening Order**

Plaintiff Loren L. Qualls ("Plaintiff") filed a Second Amended Complaint (SAC) on October 7, 2013. Doc. 10. The six individual Defendants are Mark Yudof, President of the Regents of the University of California; Steve Kang, Chancellor of UC Merced; Sam Traina, Executive Vice-Chancellor of UC Merced; Robert Oschner; and (new to this pleading) Tom Hothem and Anne Zanzucchi. The suit also names the Regents of the University of California, UC Merced, and Does 1-10 inclusive.

Plaintiff may proceed on all claims except for the claim for intentional infliction of emotional distress (IIED). As to this claim, the undersigned recommends that this be dismissed, without prejudice but without leave to amend. Should these Findings and Recommendations be adopted by the district judge assigned to this case, the Court will then provide Plaintiff with instructions for assisting the Court with serving the SAC on Defendants.

1

## I.  Screening Standard

Under 28 U.S.C § 1915(e)(2), the Court must screen all complaints brought *in forma pauperis* or by prisoners. *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000). The Court must dismiss the complaint or any portion of it that is "frivolous," "malicious," "fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

A complaint is frivolous "when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992). A complaint is malicious if not pled in good faith. *Kinney v. Plymouth Rock Squab. Co.*, 236 U.S. 43, 46 (1915). A complaint's failure to state a claim is defined in Fed.R.Civ.P. 12(b)(6), in that it does not satisfy the pleading standards in Fed.R.Civ.P. 8. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). This screening for failure to state a claim is cumulative of, and not a substitute for, any subsequent Rule 12(b)(6) motion that the defendant may choose to bring. *Teahan v. Wilhelm*, 481 F. Supp. 2d 1120 (S.D. Cal. 2007).

## II.  Pleading Standards

Under Fed. R. Civ. P. 8(a), a pleading that states a claim for a relief must include a statement demonstrating the Court's jurisdiction, "a short and plain statement of the claim showing the pleader is entitled to relief; and . . . a demand for the relief sought, which may include relief in the alternative or different types of relief." It must give the defendant fair notice of the claims against him and state their elements plainly and succinctly. *Jones v. Cmty. Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984); *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). The Supreme Court noted,

> The pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement. … [¶] [A] complaint must contain sufficient factual matter, accepted as true, to … allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). Although a court assumes the truth of well-pled factual allegations, legal conclusions are not entitled to the same assumption of truth. *Id*.

If the Court determines that the complaint fails to state a cognizable claim, the Court may grant leave to amend to the extent the deficiencies can be cured. *Lopez v. Smith*, 203 F.3d 1122, 1127-28 (9th Cir. 2000) (en banc) (the "rule favoring liberality in amendments to pleadings is particularly important for the *pro se* litigant") (*quoting Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir.1987)). Only if it is "absolutely clear" that the deficiencies could not be cured by amendment should the Court dismiss a *pro se* complaint with prejudice. *Noll* at 1448.

### III. Factual Allegations

Plaintiff is an African-American male. SAC at ¶2.[1] Beginning January 1, 2008, he was employed as a Lecturer in the Merritt Writing Program, a part of the School of Humanities at UCM. ¶12. The terms of his employment were governed by a personal services agreement between himself and the Board of Trustees at UCM; the "Unit 18 Memorandum of Understanding (MOU) between UCM and the American Federation of Teachers (AFT)"; the UCM faculty handbook; and "various other written and oral terms and conditions of employment" and applicable state law. *Id*.

During his employment, Defendants harassed and discriminated against Plaintiff. ¶¶15-16. (These allegations are summarized at greater length in Court's screening of the original complaint; that pleading, however, is no longer operative.) According to the SAC, Plaintiff's office window was not repaired for over a year; he was referred to as the "BFA" (Black Faculty Association); he was ostracized and referred to by the names of black rappers by colleagues and superiors; and he was denied the right to teach certain courses and receive grant support, rights which were granted to other white faculty members. ¶¶15-16. Ultimately, Plaintiff was terminated on the basis of his race, as described below.

On or about May 31, 2012, Plaintiff and nine other lecturers (all Caucasian) were advised by their supervisor, Defendant Oschner, that their contracts would not be renewed. ¶¶12-13. Oschner explained that this was due to a $600,000 budgetary shortfall that the Merritt Writing Program was having at the time. *Id*. When he received this notice, Plaintiff was not offered a transfer to other departments at UCM. ¶14.

---

[1] All citations are to paragraphs of the Second Amended Complaint unless otherwise noted.

3

In fact, there had never been a budgetary problem. ¶13. The nine other lecturers were either reappointed as lecturers or were offered other positions at UCM. ¶¶12-13. On August 27, 2011, Plaintiff emailed Oschner to ask for a "review of the decision not to reappoint him." ¶12. He received no reply. *Id*. Later, after Plaintiff had filed a claim with the EEOC, Plaintiff learned that UCM was citing his "lack of performance" as the reason for his non-reappointment. *Id.* Plaintiff states, however, that this was mere pretext. He was qualified for reappointment and "similarly situated" to the other lecturers. ¶¶12-14. During his employment, Plaintiff "performed his job responsibilities as a Lecturer in an exemplary fashion, received favorable performance reviews ... and otherwise performed each and every condition of employment." ¶12. Specifically, his performance reviews were "rated 3 out of 4, 4 being the highest possible rating." *Id*. Rather, Oschner "conspired with others in making up a negative performance evaluation," and the real reason for Plaintiff's non-reappointment (as well as for the decision not to offer him a transfer in May 2012) was because of his race. ¶13-14. Plaintiff adds that the UCM School of Humanities currently has no African-American faculty, and that UCM has a "proportionately small number" of African-American faculty. ¶14.

Additional allegations appear in the SAC's "Fourth Cause of Action" for defamation. Defendants Oschner, Hothem, and Zanzucchi (as well as Does 1-10) made untrue statements about Plaintiff, including to colleagues and prospective employers. They indicated "that [Plaintiff] was unprofessional, incompetent and dishonest, indicating e.g. that without Oschner's knowledge or approval, plaintiff submitted a UC Pacific Rim grant proposal under his name and he had not granted approval for same." ¶34. The SAC, like the FAC, does not allege these facts in relation to its first three claims (the Title VII, FEHA, NIED and IIED claims).

**IV.     Analysis**

    **A.     Employment Discrimination (Title VII)**

Plaintiff alleges Title VII employment discrimination by all defendants because of his race, color, and national origin. To establish federal subject matter jurisdiction, a plaintiff must exhaust his administrative remedies by filing a timely charge with the EEOC, thereby allowing the agency time to investigate the charge. *See* 42 U.S.C. § 2000e-5(b); *Lyons v. England*, 307 F.3d 1092, 1103-

4

04 (9th Cir. 2002). Plaintiff alleges that he has done this, and has enclosed his right-to-sue letter from the EEOC. ¶23; *see* Exhibit A.

In screening the original complaint, the Court found that Plaintiff had stated cognizable claims for discrimination under two theories, hostile work environment and wrongful termination. Here, Plaintiff re-alleges similar facts. Plaintiff may proceed with this claim.

### B.     Employment Discrimination (FEHA)

To state a claim for discrimination under FEHA, a plaintiff must allege that: "(1) he was a member of a protected class, (2) he ... was performing competently in the position he held, (3) he suffered an adverse employment action, such as termination, ... and (4) some other circumstance suggests discriminatory motive." *Guz v. Bechtel Nat'l Inc.,* 24 Cal.4th 317, 355, 100 Cal.Rptr.2d 352, 8 P.3d 1089 (2000) (citation omitted). A plaintiff who seeks to bring a FEHA action must first exhaust his administrative remedies. *Romano v. Rockwell Int'l Inc.,* 14 Cal.4th 479, 492 (1996); Cal. Gov't Code §§ 12960(b) & (d), § 12965(b). Here, the SAC alleges that Plaintiff has done so. ¶23; *see* Exhibit A.

As the Court stated in its screening of the FAC, Plaintiff has stated the elements of a claim for employment discrimination under FEHA.

### C.     Intentional Infliction of Emotional Distress

Plaintiff alleges IIED by the six individual defendants only, and by Does 1-10. The elements of an IIED claim are: (1) defendant's outrageous conduct; (2) defendant's intention to cause, or reckless disregard of the probability of causing, emotional distress; (3) plaintiff's suffering severe or extreme emotional distress; and (4) an actual and proximate causal link between the tortious (outrageous) conduct and the emotional distress. *Cole v. Fair Oaks Fire Protection Dist.*, 43 Cal.3d 148, 155, n. 7 (1987). To be "outrageous," the conduct must be "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Davidson v. City of Westminster*, 32 Cal.3d 197, 209 (1982) (quoting *Cervantez v. J.C. Penney Co.*, 24 Cal.3d 579, 593 (1979)). Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. *Fisher v. San Pedro Peninsula Hosp.*, 214 Cal.App.3d 590, 617 (1989). "Severe emotional distress" means "emotional distress of such substantial quality or enduring quality that no reasonable [person] in

civilized society should be expected to endure it." *Potter*, 6 Cal.4th at 1004. It means "highly unpleasant mental suffering or anguish 'from socially unacceptable conduct' . . . , which entails such intense, enduring and nontrivial emotional distress that 'no reasonable [person] in a civilized society should be expected to endure it.'" *Schild v. Rubin*, 232 Cal.App.3d 755, 762-763 (1991) (citations omitted).

In the original complaint, the basis for the IIED claim was Defendant's failure to repair a broken window. The Court dismissed this claim because it was ambiguous whether Plaintiff had to work "under, and in broken glass." In the FAC, the amended IIED claim referred solely to the above-mentioned discriminatory termination of Plaintiff. The Court held that this, too, was insufficiently outrageous as a matter of law. *Cf. Cochran v. Cochran*, 76 Cal. Rptr. 2d 540, 544-45 (Cal. Ct. App. 1998) ("[M]ajor outrage is still essential to the tort [of IIED]; and the mere fact that the actor knows that the other will regard the conduct as insulting, or will have his feeling [sic] hurts, is not enough.") (quotations and citation omitted); *Hegelson v. American Int'l Grp., Inc.*, 44 F. Supp. 2d 1091, 1095 (S.D. Cal. 1999) ("not enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice', or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort"; for liability, conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community") (citing *Cochran*, 76 Cal. Rptr. 2d at 545) (quotations and citation omitted); *Alcorn v. Anbro Eng'g, Inc.*, 2 Cal. 3d 493, 496-97 (Cal. 1970) (holding a black plaintiff's IIED claim survives demurrer where plaintiff's supervisor violently and repeatedly shouted an obscene racial epithet before firing him).

Plaintiff has not substantially expanded the allegations in support of his IIED claim. The allegations in the SAC are still insufficient as a matter of law. The Court dismisses this claim, without prejudice but without leave to amend.

### D. Negligent Infliction of Emotional Distress

Plaintiff alleges NIED by the six individual defendants only, and by Does 1-10. NIED is a form of the tort of negligence, to which the elements of duty, breach of duty, causation and damages

6

1  apply. *Huggins v. Longs Drug Stores California, Inc.*, 6 Cal.4th 124, 129 (1993). California law
2  recognizes that "there is no independent tort of negligent infliction of emotional distress" in that
3  "[t]he tort is negligence, a cause of action in which a duty to the plaintiff is an essential element."
4  *Potter*, 6 Cal.4th at 984. The existence of a duty is a question of law. *Marlene F. v. Affiliated*
5  *Psychiatric Medical Clinic, Inc.,* 48 Cal.3d 583, 588 (1989). NIED includes "at least two variants of
6  the theory" – "bystander" cases and "direct victim" cases. *Wooden v. Raveling*, 61 Cal.App.4th
7  1035, 1037 (1998). A right to recover for emotional distress as a "direct victim" arises from the
8  breach of a duty that is assumed by the defendant or imposed on the defendant as a matter of law, or
9  that arises out of the defendant's preexisting relationship with the plaintiff. *Burgess v. Superior*
10 *Court*, 2 Cal.4th 1064, 1073-1074 (1992); *Marlene F.*, 48 Cal.3d at 590. In "direct victim" cases,
11 "well-settled principles of negligence are invoked to determine whether all elements of a cause of
12 action, including duty, are present in a given case." *Burgess*, 2 Cal.4th at 1073. "[U]nless the
13 defendant has assumed a duty to plaintiff in which the emotional condition of the plaintiff is an
14 object, recovery is available only if the emotional distress arises out of the defendant's breach of
15 some other legal duty and emotional distress is proximately caused by that breach of duty." *Potter*, 6
16 Cal.4th at 985.

17    In stating his claim for NIED, Plaintiff refers to the failure of these defendants to "exercise
18 due care in the performance of their duties and obligations to Plaintiff, including their duty to follow
19 the MOU in evaluating and determining plaintiff's fourth-year reappointment, the failure of the
20 Defendants to end the harassment of Plaintiff, as well as their specific participation in the
21 harassment." In screening the FAC, the Court stated that Plaintiff failed to include facts showing
22 how he was "harassed," as he had done in the original complaint. In response, Plaintiff in his SAC
23 has again pled such facts. Plaintiff may proceed with this claim.

24    **E.    Defamation**

25    Plaintiff's next cause of action alleges defamation by Oschner, Hothem, Zanzucchi, and Does
26 1-10. It claims that they made untrue statements about Plaintiff, including to colleagues and
27 prospective employers, indicating "that [Plaintiff] was unprofessional, incompetent and dishonest,
28

7

indicating e.g. that without Oschner's knowledge or approval, plaintiff submitted a UC Pacific Rim grant proposal under his name and he had not granted approval for same." ¶34.

"Defamation is an invasion of the interest in reputation. The tort involves the intentional publication of a statement of fact which is false, unprivileged, and has a natural tendency to injure or which causes special damage." *Ringler Associates Inc. v. Maryland Cas. Co.*, 80 Cal.App.4th 1165, 1179 (2000). To state a claim for defamation, Plaintiff must show the intentional publication of a statement of fact that is false, unprivileged, and has a natural tendency to injure or which causes special damage. *Smith v. Maldonado,* 72 Cal.App.4th 637 (1999). Defamation may be any publication which would "tend to injure [the] person in his or her business or profession, or otherwise cause actual damage." *Rothman v. Jackson,* 49 Cal.App.4th 1134, 1140 (1996).

The defamatory statement must be specifically identified, and the plaintiff must plead the substance of the statement. *Jacobson v. Schwarzenegger*, 357 F.Supp.2d 1198, 1216 (C.D.Cal. 2004). Even under the liberal federal pleading standards, "general allegations of the defamatory statements" that do not identify the substance of what was said are insufficient. *See Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F.Supp. 1303, 1314 (N.D.Cal.1997) (holding that "the words constituting a libel or slander must be specifically identified, if not pleaded verbatim").

In the FAC, Plaintiff alleged the substance of the defamatory statements with the words "poor performance," "dishonesty," and "insubordination." However, the Court found that in other respects the defamation claim was insufficiently specific. In the SAC, Plaintiff has successfully pled more specific facts. This claim may proceed.

### F.     Section 1981 Claim

This claim is stated against Defendants Oschner, Hothem, and Zanzucchi. Section 1981 of the Civil Rights Act of 1866 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens." *Johnson v. Lucent Technologies Inc.,* 653 F.3d 1000, 1005–08 (9th Cir.2011) (quoting 42 U.S.C. § 1981(a)). A § 1981 claim is sufficient to withstand a motion to dismiss if it alleges that plaintiff suffered discrimination in employment on the basis of race. *Jones v. Bechtel,* 788 F.2d 571, 574 (9th Cir.1986). Analysis of a § 1981 employment discrimination claim follows

the same legal principles as those applicable in a Title VII discrimination case. *See Metoyer v. Chassman,* 504 F.3d 919, 930 (9th Cir.2007) (setting forth § 1981 discrimination requirements).

However, the Eleventh Amendment bars damages claims pursuant to 42 U.S.C. §§ 1981, 1983, 1985 and 1986 brought against the Regents, the University, and its employees acting in their official capacity. *See Vaughn v. Regents of Univ. of California*, 504 F. Supp. 1349, 1352 (E.D. Cal. 1981); *Braunstein v. Ariz. Dep't of Transp.,* 683 F.3d 1177, 1188 (9th Cir.2012) (stating that the law is well-settled that § 1981 does not abrogate the states' sovereign immunity); *Pittman v. Oregon, Emp't Dep't,* 509 F.3d 1065, 1074 (9th Cir.2007) (finding that § 1981 does not contain a cause of action against states); *Mitchell v. L.A. Cmty. Coll. Dist.,* 861 F.2d 198, 201 (9th Cir.1988) (holding that the Los Angeles Community College District was entitled to Eleventh Amendment immunity from the plaintiff's § 1981 claims).

In screening the FAC, the Court found that this claim could proceed with modifications. The SAC limits the claim to three defendants in their individual capacities. With this change, the claim may proceed as pled.

### G. Section 1985 Claim

This claim is brought against Defendants Oschner, Hothem, Zanzucchi, and Does 1-10. A claim brought for violation of section 1985(3) requires "four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992) (citation omitted). A racial, or perhaps otherwise class-based, invidiously discriminatory animus is an indispensable element of a section 1985(3) claim. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 989 (9th Cir. 2001) (quotations and citation omitted). As stated above, the Eleventh Amendment limits any claim for damages to defendants in their individual capacity.

A claim for violation of section 1985(3) requires the existence of a conspiracy and an act in furtherance of the conspiracy. *Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005) (citing *Sever* at

9

1536). The statute defines conspiracy as requiring "two or more persons." A mere allegation of conspiracy is insufficient to state a claim. *Holgate* at 676-77.

The FAC merely alleged a conspiracy committed by "Oschner, and DOE 1-10." FAC at ¶39. However, the FAC contained no specific allegations against any Doe defendants, and the Court concluded that Plaintiff could not state a claim of conspiracy. By contrast, the SAC alleges that Oschner, Hothem, and Zazucchi conspired "by refusing to abide by the MOU in evaluating and reappointing the plaintiff, to the UCM faculty and by refusing to grant to plaintiff a meaningful institutional remedy for the violation of his rights." SAC at ¶39. Plaintiff may proceed with this claim.

### H. Section 1986 Claim

This claim is stated against Defendants Yudof, Kang, and Traina. "Section 1986 imposes liability on every person who knows of an impending violation of section 1985 but neglects or refuses to prevent the violation." *Karim–Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 626 (9th Cir.1988). A violation of section 1986 thus depends on the existence of a valid claim under 1985. *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1040 (9th Cir. 1990).

In the FAC, the Court rejected this claim because Plaintiff had not pled a conspiracy under 1985.[2] In the SAC, Plaintiff does plead such a conspiracy. He also plead that these three defendants "had knowledge at all material times of the wrongs conspired to be done" yet "neglected and refused" to "prevent or aide in preventing the commission of these wrongs." Plaintiff may proceed with this claim.

### I. Section 1983 Claim

This claim is stated against Oschner, Hothem, Zanzucchi, and Does 1-5. To establish a violation of 42 U.S.C. § 1983, Plaintiff must prove that Defendants acted under color of state law and deprived Plaintiff of her constitutional rights. *West v. Atkins*, 487 U.S. 42, 48 (1988).

**Fourteenth Amendment Equal Protection**

---

[2] The Court mentions, but does not rule on, the statute of limitations. Section 1986 provides, in part, that "no action under the provisions of this section shall be sustained which is not commenced within one year after its cause of action has accrued." *See Solis v. Cnty. of Los Angeles*, 514 F.3d 946, 953 (9th Cir. 2008); *Greenfield v. Safeway Stores, Inc.*, 1988 WL 156768 (D.D.C. July 14, 1988) (one year begins when knowledge that cause of action accrued, despite filing EEOC claim).

10

"The central purpose of the Equal Protection Clause of the Fourteenth Amendment is the prevention of official conduct discriminating on the basis of race." *Washington v. Davis,* 426 U.S.229, 239 (1976). A claim under 42 U.S.C. § 1983 for violation of the Equal Protection Clause requires a showing of purposeful discrimination. *See e.g., Crawford–El v. Britton,* 523 U.S. 574 (1998). A plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class. *Barren v. Harrington,* 152 F.3d 1193, 1194 (9th Cir.1998) (citing *Washington v. Davis,* 426 U.S. at 239–40).

As the Court previously concluded in screening the FAC, Plaintiff has pled that Defendants' decision not to reappoint him was based impermissible extent on his race, color, and national origin. Plaintiff may proceed with this claim against the individual Defendants.

**Fourteenth Amendment Due Process**

In order to make out a claim of deprivation of Fourteenth Amendment due process rights, a plaintiff must demonstrate first that he had been deprived of liberty or property in the constitutional sense and then that the procedure used to deprive him of that interest was constitutionally defective. *Gibson v. Merced Cnty. Dep't of Human Res.*, 799 F.2d 582, 586 (9th Cir. 1986). Thus, a threshold requirement to a substantive or procedural due process claim is the plaintiff's showing of a liberty or property interest protected by the Constitution. *Stiesberg v. State of Cal.*, 80 F.3d 353, 356 (9th Cir. 1996). In the SAC, Plaintiff indicates that the property interest in question is Plaintiff's employment.

A plaintiff only has a constitutionally protected property interest in his continued employment if he has a "reasonable expectation or a legitimate claim of entitlement to it, rather than a mere unilateral expectation." *See Brady v. Gebbie,* 859 F.2d 1543, 1548 (9th Cir.1988). Legitimate claims of entitlement are created by existing rules or understandings that stem from an independent source such as state laws, statutes, ordinances, regulations or express or implied contracts. *Roth,* 408 U.S. 577. The court must look to California law to determine whether Plaintiff had a legitimate claim of entitlement to his job that could give rise to a procedural due process claim under federal law. *See San Bernardino Physicians' Servs. Med. Grp., Inc. v. San Bernardino Cnty.,* 825 F.2d 1404, 1408–09 (9th Cir.1987) (although the underlying substantive interest is created by an independent source such as state law, federal constitutional law determines whether that interest rises to the level

11

of a legitimate claim of entitlement protected by the Due Process Clause); *Regents of Univ. of Mich. v. Ewing,* 474 U.S. 214, 223 n. 9 (1985) ("Absent a state statute or university rule or 'anything approaching a common law of re-employment,' however, we held that [a university professor] had no property interest in the renewal of his teaching contract") (citing *Bd. of Regents v. Roth,* 408 U.S. 564, 577 (1972)). Furthermore, "[P]rocedural requirements, without more, do not create constitutionally cognizable property interests." *Clemente v. United States,* 766 F.2d 1358, 1364–65 (9th Cir.1985); *Loehr v. Ventura Cnty. Cmty. Coll. Dist.*, 743 F.2d 1310, 1316 (9th Cir. 1984). Such an interest is created if the procedural requirements are intended to be a significant substantive restriction on decision making. *Wedges/Ledges of Cal., Inc. v. City of Phoenix,* 24 F.3d 56, 62 (9th Cir.1994).

Plaintiff alleges that his term of employment was coming to an end, and the issue was whether his employment would be renewed. The FAC contains no allegations suggesting that Plaintiff had any "legitimate claim of entitlement" to the renewal of that contract. *Cf. Brown v. Chinen*, 2008 WL 2073496 (D. Haw. May 14, 2008) ("The terms of Plaintiff's appointment secured no interest in re-employment for the next year. Thus, the terms of the Plaintiff's appointment secured no property interest in employment after the expiration of his contract.") On the other hand, Plaintiff also refers to Defendants' failure "to abide by [their] procedural requirements for a grievance appeal within the institution from an adverse decision on reappointment." The SAC specifically adds allegations relating to the failure to follow "MOU procedures for assessing and evaluating Plaintiff for a fourth-year reappointment." ¶37. In light of the Ninth Circuit opinion in *Wedges*, *supra*, it may be the case that such procedures were "intended to be a significant substantive restriction on decision making." *Wedges*, *supra* at 56. Accordingly, Plaintiff's due process claim may proceed.

**V.     Conclusion**

It is **HEREBY RECOMMENDED** that:

The IIED claim shall be dismissed, without prejudice but without leave to amend. Plaintiff has attempted to allege this claim on three separate occasions yet has not been able to state sufficient facts on each occasion. Therefore, this action shall proceed only on the remaining claims alleged above.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. **Within fourteen (14) days of service of this recommendation**, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

**Should these Findings and Recommendations be adopted by the district judge assigned to this case, the Court will then provide Plaintiff with instructions for assisting the Court with serving the SAC on Defendants.**

IT IS SO ORDERED.

Dated:   **October 30, 2013**          **/s/ Sandra M. Snyder**
                                        UNITED STATES MAGISTRATE JUDGE