

1  Loren L. Qualls, Pro Se
2  PO BOX 131
   Merced, CA 95341-0131
3  TEL: 209.777.9915
4  PLAINTIFF In Pro Se

**FILED**

MAR 1 1 2014

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
        DEPUTY CLERK

5

6  **UNITED STATES DISTRICT COURT, EASTERN DISTRICT OF CALIFORNIA**

   **FRESNO, DIVISION**

7
8  LOREN LAMONTE' QUALLS,                           Case No.: 1:13-cv-00649-LJO-SMS
   an individual,
9
10          Plaintiff,
11  v.                                               **DECLARATION OF LOREN L. QUALLS**
                                                     **IN SUPPORT OF REQUEST FOR**
12  THE REGENTS OF THE UNIVERSITY OF                 **JUDICIAL NOTICE RELATING TO**
    CALIFORNIA, a California Corporation;            **PLAINTIFF'S OPPOSITION TO**
13  UNIVERSITY OF CALIFORNIA, MERCED;                **DEFENDANT'S MOTION TO DISMISS**
14  MARK YUDOF, President of The Regents of          **SECOND AMENDED COMPLAINT**
    University of California; STEVE KANG,            **(FRCP 12(b)(6))**
15  Chancellor, University of California,
16  Merced, SAM TRAINA, Executive Vice-
    Chancellor, University of California, Merced;
17  ROBERT OSCHNER, in his employment               HEARING DATE: April 2, 2014
    capacity and individually; TOM HOTHEM, in       TIME: 1:00 P.M.
18  his emplacement capacity and individually;      CTRM.: 1
19  ANNE ZANZUCCHI, in her employment
20  capacity and individually and DOES 1-10,
    inclusive,
21          Defendants
22
23
24
25
26
27
28

Plaintiff, LOREN LAMONTE' QUALLS, respectfully request that the Court take judicial notice, pursuant to Federal Rule of Evidence 201 of the following items:

1.      UC-AFT Unit 18 MOU 'Memorandum of Understanding'. A true and correct copy of a MOU six (6) pages from the UC-AFT website delineating the relevant sections attached as Exhibit 1. (Declaration of LOREN LAMONTE' QUALLS in Support of Request for Judicial Notice)

2.      The information cited in Plaintiff's opposition is the MOU website. This information may be confirmed on the website for the UC-AFT Unit 18. The specific website for the relevant pages are http://ucaft.org/content/unit-18-mou.

"Under Federal Rule of Evidence 201, the court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201.

Records that are available from reliable sources, including the Internet, are subject to judicial notice. *See Denius v. Dunlap,* 330 F. 3d 919, 926 (7th Cir. 2003) [taking judicial notice of information obtained from an official government website]; Clifford v. Regents of University of California, et a., 2012 U.S. Dist. LEXIS 60280 *13-*14 (E.D. Cal. 2012). The MOU website is a reliable and accurate source for that information related to MOU.

Based on the foregoing, Plaintiff respectfully request that the Court take judicial notice of the information set forth above.

DATED: March 10, 2014

By _____

LOREN L.QUALLS
Plaintiff In Pro Se

## ARTICLE 4
## NON-DISCRIMINATION IN EMPLOYMENT

A.    Within the limits imposed by law or University regulations, the University shall not discriminate or harass any NSF on the basis of race, color, religion, marital status, national origin, ancestry, sex, sexual orientation, physical or mental disability, medical condition (according to the California Fair Employment and Housing Act), HIV status, status as a covered veteran, or any other veteran who served on active duty during a war or in a campaign for which a campaign badge has been authorized, age, citizenship, political affiliation, or union activity.

B.    If the UC-AFT appeals a grievance to arbitration which contains allegations of a violation of this article which are not made in conjunction with the provision of another article that is arbitrable, the UC-AFT's notice must include an Acknowledgement and Waiver Form signed by the affected NSF. The Acknowledgement and Waiver Form will reflect that the NSF has elected to pursue arbitration as the exclusive dispute resolution mechanism for such claim and that the NSF understands the procedural and substantive differences between arbitration and other remedial forums in which the dispute might have been resolved, including the differences in the scope of remedies available in arbitration as compared to other forums. The timeline to appeal to Arbitration as set forth in Article 33, Arbitration, will be extended by 30 days for said grievances to enable the NSF to make an informed decision.

## ARTICLE 7a
## NSF APPOINTMENTS

**A.    GENERAL PROVISIONS**

This Article applies only to NSF with appointments that commence within the first six years of employment at the same campus. An appointment in the first six (6) years of employment does not create an entitlement to reappointment.

1.    An NSF appointment may be terminated prior to the established ending date only in accordance with Article 17, Layoff, or Article 30, Discipline and Dismissal.

2.    The appointment or reappointment of NSF shall have a definite beginning and ending date.  Such appointments shall terminate on the last day of the appointment set forth in the letter, as provided in Section B., below.

3.    Except as provided for in this MOU, the University has the sole discretion in regard to appointment and reappointment decisions and has no obligation to reappoint an NSF following the expiration of an appointment.

4.    Except as provided for in this MOU, the University has the sole discretion to make determinations regarding: who teaches a course, the duration of an appointment, the assignments of an individual, and the assessment of performance.    Such decisions are not subject to the grievance or arbitration provisions of this Agreement except to the extent they reflect or result from University actions that are, themselves, grievable and arbitrable.

5.    One (1) year of employment is defined as three (3) quarters or two (2) semesters for academic year appointees, and four (4) quarters or equivalent for fiscal year appointees, at any percentage in any unit title in the same department, program or unit at the same campus.

6.    Whenever possible, the University will consult with an NSF before making course assignments or reassignments.

7.    Upon request, a department, program or unit shall provide an NSF access to her/his student evaluations.

**B.    LETTERS OF APPOINTMENT**

1.    Letters of appointment or reappointment shall be issued to academic year appointees by June 1st or as soon thereafter as practicable for courses being offered the next academic year and shall be consistent with this Agreement.

2. When the University appoints or reappoints an NSF, s/he shall be informed in writing of:

   a. the title of the position;

   b. the salary rate;

   c. the name of the employing department, program or unit;

   d. the period(s) for which the appointment is effective;

   e. the percentage of time;

   f. the nature of the appointment and the general responsibilities;

   g. the name of the department chair, program head or other person to whom the NSF reports; and

   h. the Web Site addresses of both the University and the Union.

## C.   INITIAL APPOINTMENT AND REAPPOINTMENT

1. When the University appoints NSF in their first six years of employment, the parties recognize that it does not do so intending that they will or will not achieve Continuing Appointment status. The parties also recognize that legitimate practices or programs or needs may exist, or be established (including time-limited positions) that may have an effect of limiting pre-six year lecturer access to Continuing Appointments. Nevertheless, the University will not engage in activities or establish practices and/or programs that preclude pre-six year NSF access to Continuing Appointments.

2. The University has the right to make appointment and reappointment decisions based on considerations that include but are not limited to:

   a. the implementation of programs that have time-limited positions, insofar as such programs adhere to their stated academic goals and pass through documented regular academic consultative processes;

   b. a pedagogical program dependent upon varied perspectives or pedagogy, insofar as the program does not deny consideration to NSF on an individual basis and passes through documented regular academic consultative processes; and/or

c. The employment of other academic appointees in order to accomplish the University's academic goals as long as any actions taken pass through documented regular academic consultative processes and do not violate this MOU.

3. Initial Appointment

   a. The initial appointment may be for a period of up to two (2) academic years.

   b. The duration of an appointment or augmentation of the existing appointment is at the sole discretion of the University, unless otherwise provided for in this MOU. Reductions of the existing appointment percentage shall be in accordance with Article 17, Layoff.

   c. The NSF is expected to perform her/his duties in accordance with the provisions of Article 3, Academic Responsibility.

4. Reappointment

   a. When the University is considering an NSF for a reappointment, the following procedures shall apply:

      1) Provided need exists for pre-six year NSF, a decision to reappoint or not to reappoint an NSF who has requested consideration shall be preceded by an assessment of the performance of the NSF. This assessment shall be undertaken in accordance with each department's applicable procedures for assessment of pre-six year appointees in effect at the time of the assessment. The input of qualified post-six year NSF in the assessment process is encouraged, but not required.

      2) NSF shall be notified of the review criteria, the form of assessment that the department, program or unit will follow for reappointments, and when the assessment will occur.

      3) Assessments of individual NSF for reappointment are to be made on the basis of demonstrated competence in the field, ability in teaching, academic responsibility and other assigned duties that may include University co-curricular and community service.

      4) An NSF may provide letters of assessment, including letters from NSF or Senate Faculty, and other relevant materials to

the department chair or her/his designee as part of the assessment process. Due consideration will be given to all relevant materials in the academic review/personnel file, if any.

b.      Reappointment(s) during the first six (6) years of employment at the same campus may be for a period of up to three (3) academic years.

c.      Upon reappointment to a fourth year of service within the same department, the University shall grant a salary increase of at least two steps to any NSF who has not received a prior within-range salary increase of at least two steps. The University is not precluded from granting an NSF an increase of more than two steps.

d.      When making a reappointment decision, the University will not replace an individual NSF who has received a within-range salary increase with a lower paid NSF solely to reduce salary costs. This subsection shall only apply to those instances where the lower paid NSF is teaching the same courses as the higher paid NSF.

## D.      GRIEVABILITY AND ARBITRABILITY

1.      Subject to the limitations set forth in this Article, allegations of procedural violations of this Article shall be subject to the full Grievance and Arbitration provisions of this Article. An arbitrator reviewing procedural violations shall have the authority to order the University to redo the procedure.

2.      Non-reappointment decisions are not grievable unless the grievance alleges a procedural violation or a violation of the prohibition on post-six year avoidance in Section C.1., or C.4.d., above. Allegations that the University made a reappointment decision in violation of an NSF's academic freedom rights or for a discriminatory reason may only be pursued through Article 2 or Article 4, respectively.

3.      An arbitrator reviewing a grievance under this Article shall have no authority to order the University to appoint or reappoint an NSF. An arbitrator reviewing a non-reappointment decision shall not have the authority to substitute her/his judgment for the University's judgment with respect to the University's academic needs or an individual NSF's performance or qualifications. In those instances where the University's decision or action was based on an NSF's performance, the arbitrator shall have jurisdiction to review the NSF's academic review/personnel files, if any.

4. Special Enforcement Provisions For Allegations of Post Six Year Avoidance

The following provisions apply to grievances alleging that the University has violated Section C.1. and/or C.4.d., above. Only the Union, and not individual NSF, may submit grievances alleging a violation of C.1. and/or C.4.d., above.

a. In any grievance involving Section C.1., the Union shall have the burden to provide evidence of a policy or practice that restricts access to Continuing Appointments in violation of Section C.1., above.

b. When the Union alleges a violation of section C.1., and the University asserts that its decision comported with C.2.a., b., and/or c., the arbitrator may consider if the University's action was not in conformance with section C.2.a., b., and/or c., and therefore was only a pretext for post-six year avoidance.

c. In any grievance involving Section C.4.d., the Union must provide the following information within forty five (45) calendar days of the date on which the Union knew or should have known a violation occurred:

1) the name of the NSF who was not reappointed;

2) the department where the NSF has an appointment;

3) the courses taught by the NSF who was replaced;

4) the name of the lower-paid NSF who replaced the higher-paid NSF; and

5) the courses taught by the lower paid NSF.

d. Arbitrator's Remedial Authority

If an arbitrator finds that the University has violated the prohibition on post-six year avoidance set forth in Section C.1., or the provisions of C.4.d., above, her/his remedial authority shall not exceed ordering the University to immediately discontinue the practice or policy and consider the adversely affected NSF(s) for a reappointment. Upon the request of either party, the arbitrator may retain jurisdiction to ensure that the University has complied with her/his award.

## PROOF OF SERVICE

I am over the age of 18 years and not a party to this action. My business address is: 628 Yosemite Avenue, Merced, CA 95348, Telephone No. (209) 756-1022; No fax.

On March 10, 2014 I served true copies of documents entitled:

**DECLARATION OF LOREN L. QUALLS IN SUPPORT OF REQUEST FOR JUDICIAL NOTICE RELATING TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT (FRCP 12(b)(6))**

upon the parties in this action addressed as stated on the attached service list:

[ ] OFFICE MAIL:. By placing in sealed envelope(s), which I place for collection and mailing today following the ordinary business practices. I am readily familiar with this office's practice for collection and processing of correspondence for mailing; such correspondence would be deposited with the United States Postal Service on the same day in the ordinary course of business.

[ X ] PERSONAL DEPOSIT IN MAIL: By placing in sealed envelope(s), which I personally deposited with the U.S. Postal Service at Merced, CA, with first class postage thereon fully prepaid.

[ ] EXPRESS U.S. MAIL: Each such envelope was deposited in a facility regularly maintained at the U.S. Postal Service for receipt of Express Mail at Merced, CA, with Express Mail postage paid.

[ ] HAND DELIVERY: I caused to be had delivered each such envelope to the office of the addressee.

[ ] FEDERAL EXPRESS BY AGREEMENT OF ALL PARTIES: by placing in sealed envelope(s) designed by Federal Express with delivery fees paid or provided for, which I deposited in a facility regularly maintained by Federal Express or delivered to a Federal Express courier, at Merced, CA.

[ ] ELECTRONIC MAIL: By transmitting the document by electronic mail to the electronic mail address as stated on the attached service list.

[ ] FAX (BY AGREEMENT ONLY): By transmitting the document by facsimile transmission. The transmission was reported complete and without error.

[ ] (Federal) I declare that I am employed in the office of a member of the bar of this Court, at whose direction the service was made. I declare under penalty of perjury that the foregoing is true and correct.

DATED: March 10, 2014

Kalala Moli

LOREN LAMONTE' QUALLS v. REGENTS OF THE UNIVERSITY OF CALIFORNIA

United States District Court - Eastern District of California

Case No.: 1:13-cv-00649-LJO-SMS

SERVICE LIST

PORTER/SCOTT
A PROFESSIONAL CORPORATION
Nancy J. Sheehan, SBN 109419
350 University Avenue, Suite 200
Sacramento, California 95825