# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOREN LAMONTE' QUALLS,<br><br>Plaintiff,<br><br>v.<br><br>REGENTS OF THE UNIVERSITY OF CALIFORNIA et al.,<br><br>Defendants. | Case No. 1:13-CV-00649-LJO-SMS<br><br>FINDINGS AND RECOMMENDATIONS ON DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT<br><br>(Doc. 16) |

Before the undersigned is Defendants' Motion to Dismiss the Second Amended Complaint ("SAC"). Doc 16. For the reasons that follow, the undersigned recommends the motion be granted in part and denied in part.

## PROCEDURAL HISTORY

Plaintiff Loren L. Qualls ("Plaintiff"), proceeding *pro se*, filed a Complaint on May 3, 2013. Doc. 1. This was dismissed through the screening process, as was a First Amended Complaint filed July 31, 2013. The operative pleading is Plaintiff's Second Amended Complaint, filed on October 7, 2013. Doc. 10. Through the screening process, the Court dismissed the SAC's second claim (for intentional infliction of emotional distress) but otherwise allowed the SAC to be served. Doc. 12.

Screening for failure to state a claim is cumulative of, and not a substitute for, any subsequent Rule 12(b)(6) motion that the defendant may choose to bring. *Teahan v. Wilhelm*, 481 F. Supp. 2d 1120 (S.D. Cal. 2007). On February 24, 2014, Defendants filed a motion to dismiss. Doc 16. Plaintiff filed an (amended) opposition on March 12, 2014. Docs. 22-24. Defendants replied on March 25, 2014. Doc. 25.

1

**CAUSES OF ACTION IN SECOND AMENDED COMPLAINT**

The six individual Defendants in the SAC are Mark Yudof, President of the Regents of the University of California; Steve Kang, Chancellor of UC Merced; Sam Traina, Executive Vice-Chancellor of UC Merced; Robert Oschner; and (new to this pleading) Tom Hothem and Anne Zanzucchi. The suit also names the Regents of the University of California, UC Merced, and Does 1-10 inclusive. After screening, the surviving claims in the SAC are:

1. First cause of action (against all defendants): "Title VII … and 42 U.S.C. 1981, 1983, [1985], and 1986 and the California Fair Employment and Housing law". (This appears to be duplicative of claims five through ten, except that it specifies all defendants.)
2. Third COA (against either all individual defendants or only against Oschner, Hothem, and Zanzucchi): negligent infliction of emotional distress.
3. Fourth COA (against Oschner, Hothem, and Zanzucchi): defamation.
4. Fifth COA (against Oschner, Hothem, and Zanzucchi): 42 U.S.C. § 1983.
5. Sixth COA (against Oschner, Hothem, and Zanzucchi): 42 U.S.C. § 1985.
6. Seventh COA: (against Yudof, Kang, and Traina): 42 U.S.C. § 1986.
7. Eighth COA: (against Oschner, Hothem, and Zanzucchi): 42 U.S.C. § 1981.
8. Ninth COA (against the Regents): race discrimination in violation of Title VII.
9. Tenth COA (against Oschner, Hothem, and Zanzucchi): race discrimination in violation of FEHA.

**FACTUAL ALLEGATIONS**

Plaintiff is an African-American male. SAC at ¶2.[1] He started working for the UC Merced School of Humanities in January 2008 as a lecturer for the Merritt Writing Program. ¶12. The terms of his employment were governed by a personal services agreement between himself and the Board of Trustees at UCM; the "Unit 18 Memorandum of Understanding (MOU) between UCM and the American Federation of Teachers (AFT)"; the UCM faculty handbook; and "various other written and oral terms and conditions of employment" and applicable state law. *Id*. In May 2011, Plaintiff learned that he would not be reappointed to his lecturer position. *Id*. His last day at UC Merced was June 30, 2011. *Id*.

Allegations Regarding Race Discrimination

Plaintiff alleges that he has been "continually harassed" because of his race since his first appointment at UC Merced in January 2008. ¶15. Specifically, his broken office window was not repaired for over a year; he was referred to as the "BFA" (Black Faculty Association) and "JZ or names of other black rappers;" he did not receive the same recognition for his work as white faculty

---

[1] All citations are to paragraphs of the Second Amended Complaint unless otherwise noted.

2

members; and he was denied opportunities given to white faculty members, such as grant support and teaching certain courses. ¶¶15-16. He also contends he was denied proper evaluation and consideration for his fourth year reappointment, pursuant to the Unit 18 Memorandum of Understanding, due to his race and ethnicity. *Id*.

On or about May 31, 2012, Plaintiff and nine other lecturers (all Caucasian) were advised by their supervisor, Defendant Oschner, that their contracts would not be renewed. ¶¶12-13. Oschner explained that this was due to a $600,000 budgetary shortfall that the Merritt Writing Program was having at the time. *Id*. When he received this notice, Plaintiff was not offered a transfer to other departments at UCM. ¶14.

Plaintiff contends that there in fact had never been a budgetary problem, and that the true reason for not reappointing him was his race and ethnicity. ¶13. Plaintiff contends that the nine other lecturers were either reappointed as lecturers or were offered other positions at UCM. ¶¶12-13.

On August 27, 2011, Plaintiff emailed Oschner to ask for a "review of the decision not to reappoint him." ¶12. He received no reply. *Id*. Later, after Plaintiff had filed a claim with the EEOC, Plaintiff learned that UCM was citing his "lack of performance" as the reason for his non-reappointment. *Id*.

Plaintiff states, however, that this was mere pretext. He was qualified for reappointment and "similarly situated" to the other lecturers. ¶¶12-14. During his employment, Plaintiff "performed his job responsibilities as a Lecturer in an exemplary fashion, received favorable performance reviews ... and otherwise performed each and every condition of employment." ¶12. Specifically, his performance reviews were "rated 3 out of 4, 4 being the highest possible rating." *Id*. Rather, Oschner "conspired with others in making up a negative performance evaluation," and the real reason for Plaintiff's non-reappointment (as well as for the decision not to offer him a transfer in May 2012) was because of his race. ¶13-14. Plaintiff adds that the UCM School of Humanities currently has no African-American faculty, and that UCM has a "proportionately small number" of African-American faculty. ¶14.

3

Allegations Regarding Defendants Oschner, Hothem, and Zanzucchi

Oschner was Plaintiff's supervisor at the Merritt Writing Center. SAC ¶12. In addition to informing Plaintiff that he would not be reappointed due to budget cuts, Plaintiff alleges that Oschner lied to him about the budget cuts. SAC ¶¶12-13. Furthermore, Plaintiff avers that Oschner "conspired with others in making up a negative performance evaluation and falsely claiming the MOU was followed in evaluating and considering Plaintiff for reappointment." SAC ¶13.

Qualls accuses Oschner, Hothem, and Zanzucchi of failing to follow the MOU in deciding whether Plaintiff would be reappointed as a lecturer for the Merritt Writing Center, failing to end their harassment of him, and of participating in the harassment. SAC ¶30. He believes Oschner, Hothem, and Zanzucchi conspired to deny him equal protection of the laws by "refusing to abide by the MOU" and "refusing to grant to plaintiff a meaningful remedy for the violation of his rights." SAC ¶39. Plaintiff further contends that Oschner, Hothem, and Zanzucchi have "deprived Plaintiff of his right to make and enforce contracts" and of the benefit of UC Merced Regulations, including the Memorandum of Understanding, because of his race. SAC, ¶44.

Plaintiff claims Oschner, Hothem, and Zanzucchi made false statements about him. SAC ¶34. Specifically, Plaintiff avers that Oschner, Hothem, and Zanzucchi told "fellow workers, colleagues and to whomever they spoke with about Plaintiff," including colleagues and prospective employers, "that [Plaintiff] was unprofessional, incompetent and dishonest, indicating e.g. that without Oschner's knowledge or approval, plaintiff submitted a UC Pacific Rim grant proposal under his name and he had not granted approval for same." ¶34. Plaintiff contends that, after his contract was not renewed, Defendants told his prospective employers and co-workers that he was not reappointed to his position with the Merritt Writing Program because of "poor performance, dishonesty, and insubordination." *Id*.

Allegations Regarding Yudof and Traina

The Court takes judicial notice that Yudof was the President of the University of California between 2008 and 2013. Although Yudof is named as a defendant, Plaintiff admits that he is not seeking any damages or declaratory relief from him. SAC ¶4.

4

Traina is Executive Vice Chancellor at UC Merced. SAC ¶6. According to Plaintiff, he oversees faculty personnel matters. *Id.*

Plaintiff alleges that Yudof and Traina had knowledge of the "wrongs conspired to be done" against him and failed to prevent them, despite having the power to do so. SAC ¶42. Qualls contends they could have ensured he was properly evaluated for reappointment pursuant to the MOU or granted him "some other effective remedy to redress deprivation of his rights." *Id.*

## LEGAL STANDARD APPLICABLE TO MOTION TO DISMISS

A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995). A F.R.Civ.P. 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In addressing dismissal, a court must: (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996). Nonetheless, a court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). A court "need not assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir.1986), and must not "assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated . . . laws in ways that have not been alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897 (1983). A court need not permit an attempt to amend if "it is clear that the complaint could not be saved by an amendment." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

A plaintiff is obliged "to provide the 'grounds' of his 'entitlement to relief' [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations

5

<9:00><9:00><9:00><9:00><9:00><9:00>

omitted). Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). In practice, a complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009), the U.S. Supreme Court explained:

> . . . a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. (Citations omitted.)

After discussing *Iqbal*, the Ninth Circuit summarized: "In sum, for a complaint to survive [dismissal], the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949).

The U.S. Supreme Court applies a "two-prong approach" to address dismissal:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949-1950.

Moreover, "a complaint may be dismissed under Rule 12(b)(6) when its own allegations indicate the existence of an affirmative defense." *Quiller v. Barclays American/Credit, Inc.*, 727

6

F.2d 1067, 1069 (11th Cir. 1984). For instance, a limitations defense may be raised by a F.R.Civ.P. 12(b)(6) motion to dismiss. *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980); *see Avco Corp. v. Precision Air Parts, Inc.*, 676 F.2d 494, 495 (11th Cir. 1982), *cert. denied*, 459 U.S. 1037, 103 S.Ct. 450 (1982).

If the Court determines that the complaint fails to state a cognizable claim, the Court may grant leave to amend to the extent the deficiencies can be cured. *Lopez v. Smith*, 203 F.3d 1122, 1127-28 (9th Cir. 2000) (en banc) (the "rule favoring liberality in amendments to pleadings is particularly important for the *pro se* litigant") (*quoting Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir.1987)). Only if it is "absolutely clear" that the deficiencies could not be cured by amendment should the Court dismiss a *pro se* complaint with prejudice. *Noll* at 1448.

With these standards in mind, this Court turns to Defendants' challenges to the SAC's claims.

## ANALYSIS

### Redundant First Cause of Action

The caption of Plaintiff's first cause of action refers to "unlawful discrimination based upon race and ethnicity." The body of this cause of action refers to specific statutes: "Title VII … and 42 U.S.C. 1981, 1983, [1985], and 1986 and the California Fair Employment and Housing law". These same violations are alleged in claims five through ten. Thus this first cause of action appears to be redundant to those claims (except insofar as the first COA was alleged against "all defendants" and the later claims named specific defendants).

The first cause of action is dismissed, with leave to amend. Plaintiff may file an amended complaint which incorporates any of the allegations in this dismissed COA.

### Individual Liability Under Title VII

Plaintiff's Ninth COA is for violations of Title VII of the Civil Rights Act of 1964. The named Defendants are "The Regents, and UCM" (UCM was erroneously named; the Regents is the proper defendant). This claim seeks "such affirmative action and other equitable relief (including reinstatement with back pay) as this Court deems appropriate under 42. U.S.C. § 2000e-5(g)." As noted above, Plaintiff's First COA also mentioned Title VII. It named "all defendants."

7

1    Plaintiff concedes that individuals cannot be held liable for damages under Title VII.
2    Opposition, 4:22-26; *see Miller v. Maxwell's Intern. Inc.*, 991 F. 2d 583, 587 (9th Cir. 1993).
3    Plaintiff's Ninth COA complies with this principle, as it names only the Regents. However, should
4    Plaintiff re-allege material from his first (dismissed) COA relating to Title VII, he should not seek
5    money damages from individual defendants.

**Individual Liability Under FEHA**

Plaintiff's Tenth COA, against Oschner, Hothem, and Zanzucchi, is for violations of FEHA. As noted above, Plaintiff's First COA also mentioned FEHA. It named "all defendants."

To state a claim for discrimination under FEHA, a plaintiff must allege that: "(1) he was a member of a protected class, (2) he ... was performing competently in the position he held, (3) he suffered an adverse employment action, such as termination, ... and (4) some other circumstance suggests discriminatory motive." *Guz v. Bechtel Nat'l Inc.,* 24 Cal.4th 317, 355, 100 Cal.Rptr.2d 352, 8 P.3d 1089 (2000) (citation omitted).

California law draws a distinction between discrimination and harassment claims. *See Janken v. GM Hughes Electronics*, 46 Cal.App.4th 55, 62–63, 53 Cal.Rptr.2d 741 (1996); *see also Reno v. Baird,* 18 Cal.4th 640, 645–47, 76 Cal.Rptr.2d 499, 957 P.2d 1333 (1998) (summarizing *Janken* with approval and affirming *Janken*'s delineation between harassment and discrimination). Under FEHA, while individual supervisory employees may be liable for personal conduct constituting harassment, they may not be held individually liable for personnel management decisions later considered to be discriminatory. *Janken*, 46 Cal.App.4th at 62–63, 53 Cal.Rptr.2d 741. As the court explained in *Janken,* the distinction is between harassment, "a type of conduct not necessary to a supervisor's job performance," and "business or personnel management decisions—which might later be considered discriminatory—as inherently necessary to performance of a supervisor's job." *Id.* Harassment "consists of conduct outside of the scope of necessary job performance, conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives." *Id*. at 63, 53 Cal.Rptr.2d 741. In contrast, "commonly necessary personnel management actions such as hiring and firing, job or project assignments, office or work station assignments, promotion or demotion, performance evaluations, the provision of support, the assignment or non-assignment of

1  supervisory functions, deciding who will and who will not attend meetings, deciding who will be
2  laid off, and the like, do not come within the meaning of harassment." *Id*. at 64, 53 Cal.Rptr.2d 741

3  The SAC cannot state a FEHA claim for discrimination. Plaintiff's Tenth COA alleges a
4  FEHA violation against only individuals. The First COA alleged a FEHA against "all defendants,"
5  but the Court dismissed this claim (above) with leave to amend.

6  As for harassment, in the original complaint, the only allegations that fall within this term are
7  the claims that unidentified people referred to Plaintiff as "Snoop-Dog" or "Jay-Z", or the "guy with
8  hair like burnt cheetos". Doc. 1 at ¶ 14. Also according to the original Complaint, Plaintiff was
9  referred to as the sole member of the "BFA" or Black Faculty Association. In the SAC, Plaintiff
10 alleges that he was "ostracized and called 'Black' nicknames by his colleagues and supervisors," and
11 was "often referred to as JZ or names of other black rappers." However, he does not identify any of
12 the individual defendants as the person(s) who made these comments (aside from the IT
13 administrator who made the BFA remark in the original complaint). If Petitioner wishes to name
14 defendants for acts of harassment in violation of FEHA, he must identify these and allege acts of
15 harassment by them.

16 Furthermore, harassment must unreasonably interfere with Plaintiff's work performance.
17 *Thompson v. City of Monrovia*, 186 Cal.App.4th 860, 876 (2010). Statements made to persons other
18 than Plaintiff after Plaintiff was no longer an employee could not affect his work performance.
19 Moreover, Plaintiff must allege facts explaining how statements about the quality of his work were
20 related to his race.

21 For this reason, the first and tenth claims (involving FEHA) are dismissed with leave to
22 amend.

23 **Insufficient Facts Against Yudof: Third COA (Negligent Infliction of Emotional**
24 **Distress)**

25 Plaintiff's Third COA is for Negligent Infliction of Emotional Distress. It is unclear whether
26 this claim is against all individual defendants or only against Oschner, Hothem, and Zanzucchi.

27 As the Court stated in its previous screening order, NIED is a form of the tort of negligence,
28 to which the elements of duty, breach of duty, causation and damages apply. *Huggins v. Longs Drug*

9

1  *Stores California, Inc.*, 6 Cal.4th 124, 129 (1993). California law recognizes that "there is no
2  independent tort of negligent infliction of emotional distress" in that "[t]he tort is negligence, a cause
3  of action in which a duty to the plaintiff is an essential element." *Potter*, 6 Cal.4th at 984. The
4  existence of a duty is a question of law. *Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc.,* 48
5  Cal.3d 583, 588 (1989).

As Defendants note, the SAC does not allege any facts to support a contention that Yudof, who oversaw the entire UC system between 2008 and 2013, had any involvement in decisions relating to Plaintiff's employment. The claim is dismissed with leave to amend.[2]

**Statute of Limitations: Third COA (Negligent Infliction of Emotional Distress)**

Negligent infliction of emotional distress is a common law claim under *California law*. *Miklosy v. Regents of the University of California*, 44 Cal. 4th 876, 902 (2008). The statute of limitations for a claim of NIED is two years. Cal. Code of Civil Procedure § 335.1; *Roman v. County of Los Angeles*, 85 Cal. App. 4th 316, 323 (2000).

Plaintiff refers specifically to acts of harassment by Defendants, which necessarily would have ended on the day of his termination, June 30, 2011. The two-year limitation for allegations under this theory would have expired on June 30, 2013. Plaintiff also refers to defendants' breach of their "duty to follow the MOU in evaluating and determining plaintiff's fourth-year reappointment," which as characterized by the SAC also occurred prior to June 30, 2011.

The Court quotes the following principles governing the relation-back doctrine from *California Sch. Employees Ass'n v. Fremont Newark Cmty. Coll. Dist.*, A093857, 2002 WL 31656137 (Cal. Ct. App. Nov. 26, 2002) (brackets and ellipses in original):

> "California law ... governs whether in a section 1983 action an amended complaint relates back to the filing of the original complaint." (*Ortiz v. City of Imperial* (9th Cir.1989) 884 F.2d 1312, 1314.) "The general rule is that an amended complaint that adds a new defendant does not relate back to the date of filing the original complaint and the statute of limitations is applied as of the date the amended complaint is filed, not the date the original complaint is filed. (*Liberty Transport, Inc. v. Harry W. Gorst Co.* . (1991) 229 Cal.App.3d 417, 428, 280 Cal.Rptr. 159 ..., disapproved on other grounds in *Adams v. Murakami* (1991) 54 Cal.3d 105, 115–116, 284 Cal.Rptr. 318, 813 P.2d 1348 ...; *Ingram v. Superior Court* (1979) 98 Cal.App.3d 483, 490–492, 159 Cal.Rptr. 557 ...; Weil & Brown [Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 1999) ] ¶

---

[2] Plaintiff acknowledges he is not seeking damages from YUDOF. SAC, ¶ 4. However, this does not necessarily mean that he cannot plead this element of the claim, and he must do so should he choose to re-allege this claim.

> 6:733, at p. 6–146, 159 Cal.Rptr. 557; 5 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 1158, pp. 617–619 .) A recognized exception to the general rule is the substitution under [Code of Civil Procedure] section 474 of a new defendant for a fictitious Doe defendant named in the original complaint as to whom a cause of action was stated in the original complaint. (*Liberty Transport, Inc. v. Harry W. Gorst Co., supra,* 229 Cal.App.3d 417, 428, 280 Cal.Rptr. 159; *Kerr–McGee Chemical Corp. v. Superior Court* (1984) 160 Cal.App.3d 594, 597, 206 Cal.Rptr. 654 ...; Weil & Brown, *supra,* ¶¶ 6:735, 6:736, at pp. 6–146 to 6–147.)" (*Woo v. Superior Court* (1999) 75 Cal.App.4th 169, 176, 89 Cal.Rptr.2d 20.)
>
> Code of Civil Procedure section 474 provides: "When the plaintiff is ignorant of the name of a defendant, he must state that fact in the complaint ... and such defendant may be designated in any pleading or proceeding by any name, and when his true name is discovered, the pleading or proceeding must be amended accordingly ...." "If the requirements of [Code of Civil Procedure] section 474 are satisfied, the amended complaint substituting a new defendant for a fictitious Doe defendant filed after the statute of limitations has expired is deemed filed as of the date the original complaint was filed. (*Austin v. Massachusetts Bonding & Insurance Co.* (1961) 56 Cal.2d 596, 599, 15 Cal.Rptr. 817, 364 P.2d 681 ....)" (*Woo v. Superior Court, supra,* 75 Cal.App.4th at p. 176, 89 Cal.Rptr.2d 20.)
>
> "Among the requirements for application of the section 474 relation back doctrine is that the new defendant in an amended complaint be substituted for an existing fictitious Doe defendant named in the original complaint. (*Woo v. Superior Court, supra,* at p. 176, 89 Cal.Rptr.2d 20.) If no fictitious defendants are included in the original complaint, there is no relation back when a new defendant is named for the first time in an amendment filed after expiration of the statute of limitations. (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2002) ¶¶ 6:733, 6:744, pp. 6–146, 6–149; *Kralow Co. v. Sully–Miller Contracting Co.* . (1985) 168 Cal.App.3d 1029, 214 Cal.Rptr. 630.) "The straightforward rule is that amendment after the statute of limitations has run will not be permitted when the result is the addition of a party who, up to the time of the proposed amendment, was neither a named nor a fictitiously designated party to the proceeding." (Ingram v. Superior Court, supra, 98 Cal.App.3d 483, 492, 159 Cal.Rptr. 557.)
>
> Additionally, the complaint must state that the plaintiff is ignorant of the true name of the fictitiously named defendant (*Kerr–McGee Chemical Corp. v. Superior Court, supra,* 160 Cal.App.3d at pp. 597–598, 206 Cal.Rptr. 654) and must set forth a cause of action against that defendant. (*Winding Creek v. McGlashan* (1996) 44 Cal.App.4th 933, 941, 52 Cal.Rptr.2d 236.) The plaintiff must have been genuinely ignorant of the fictitiously named defendant's true name at the time of filing the original complaint. (*Woo v. Superior Court, supra,* 75 Cal.4th at p. 177.)

Here, Plaintiff did name Doe defendants in his original complaint, which was filed on May 3, 2013. *See* Complaint, doc. 1 at pp. 9, 13, 14, 16. Their appearance, though in the body and not the caption of the complaint, was sufficient to give notice.

However, it is apparent from Plaintiff's allegations that he was aware of the names of all the individual defendants at the time he filed his complaint. Therefore he cannot avail himself of the relation-back doctrine. The Third COA is therefore dismissed without leave to amend.

**Statute of Limitations: Fifth COA (42 U.S.C. 1983)**

The fifth claim for relief is asserted against Oschner, Hothem, and Zanzucchi for violations of 42 U.S.C. 1983, on theories of equal protection (race discrimination) and due process (failure to abide by the terms of the MOU), predicated on

> [not] follow[ing] the MOU procedures for assessing and evaluating Plaintiff for a fourth-year reappointment [to] UCM's faculty, and not providing or permitting plaintiff to have access to a meaningful institutional remedy for violation of his rights ... failing to abide by its own substantive requirements for evaluating and reappointing plaintiff to the faculty for a fourth year and failing to abide by its procedural requirements for a grievance appeal within the institution from an adverse decision on reappointment.

SAC at ¶37.

To establish a violation of 42 U.S.C. § 1983, Plaintiff must prove that Defendants acted under color of state law and deprived Plaintiff of her constitutional rights. *West v. Atkins*, 487 U.S. 42, 48 (1988). A claim under 42 U.S.C. § 1983 for violation of the Equal Protection Clause requires a showing of purposeful discrimination. *See e.g., Crawford–El v. Britton,* 523 U.S. 574 (1998). A plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class. *Barren v. Harrington,* 152 F.3d 1193, 1194 (9th Cir.1998) (citing *Washington v. Davis,* 426 U.S. at 239–40). To state a claim of deprivation of Fourteenth Amendment due process, a plaintiff must demonstrate first that he had been deprived of liberty or property in the constitutional sense and then that the procedure used to deprive him of that interest was constitutionally defective. *Gibson v. Merced Cnty. Dep't of Human Res.*, 799 F.2d 582, 586 (9th Cir. 1986).

The statute of limitations for a § 1983 claim is determined by the forum state's statute of limitations for personal injury claims. *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004). In California, personal injury claims are subject to a two year limitation period. Cal. Code of Civil Procedure § 335.1. Under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury that is the basis of the action. *Maldonado v. Harris*, 370 F.3d 945, 955 (9`'' Cir. 2004).

As Defendants argue, because the termination of Plaintiff occurred on June 30, 2011, claims against the individual defendants arising from this act are barred by the statute of limitations. *Cf.*

12

*National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (in context of 180-day statute of limitation for filing EOC complaint, termination of employment is a discrete act to which "continuing violation" doctrine does not apply). The same is true of harassment which occurred prior to this termination date.

This COA also makes reference to Defendants' failure to respond to Plaintiff's grievance appeal. Defendants argue that this theory fails to toll the statute of limitations for discrimination occurring during Plaintiff's employment, citing *Delaware State College v. Ricks*, 449 U.S. 250, 252 (1980). There, the Court characterized the grievance procedure for a denial of tenure as "a remedy for a prior decision, not an opportunity to influence that decision before it is made," and therefore not part of a continuing violation. *Id.* at 261. However, the Court made this statement in the context of a Title VII claim for discrimination. Here, the issue is a violation of section 1983. Plaintiff claims that he has been deprived of due process, in that he was deprived of his right under the MOU to appeal a property interest in employment. Defendants' failure to follow the grievance process would thus constitute an independent violation which falls within the statute of limitations.

Therefore, subject to the modifications outlined above, Defendants' motion to dismiss this claim is denied.

**Statute of Limitations: Sixth COA (42 U.S.C. 1985)**

A claim brought for violation of section 1985(3) requires "four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992) (citation omitted). A racial, or perhaps otherwise class-based, invidiously discriminatory animus is an indispensable element of a section 1985(3) claim. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 989 (9th Cir. 2001) (quotations and citation omitted).

The two year statute of limitations set forth in California Code of Civil Procedure §335.1 also applies to claims asserted under 42 U.S.C. § 1985. *McDougal v. County of Imperial*, 942 F. 2d 668, 673-74 (9th Cir. 1991).

Plaintiff has not alleged a conspiracy by defendants falling within the statutory period. As individual defendants Oschner, Hothem, and Zanzucchi were first named in the FAC filed July 31, 2013, they may only be held answerable to violations of this statute occurring on or after July 31, 2011. For the same reasons stated with respect to Plaintiff's 1983 claim, this claim is dismissed with leave to amend.

**Insufficient Facts Against Yudof: Seventh COA (42 U.S.C. 1986)**

The Seventh COA is stated against Defendants Yudof, Kang, and Traina. "Section 1986 imposes liability on every person who knows of an impending violation of section 1985 but neglects or refuses to prevent the violation." *Karim–Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 626 (9th Cir.1988). A violation of section 1986 thus depends on the existence of a valid claim under 1985. *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1040 (9th Cir. 1990).

In order to assert a claim under § 1986, Plaintiff must plead facts showing Yudof had knowledge of an impending violation of § 1985, which proscribes conspiracies to interfere with certain civil rights. Karim-Panahi, 839 F.2d at 626. As the Court noted in screening the SAC, Plaintiff alleged that these three defendants "had knowledge at all material times of the wrongs conspired to be done" yet "neglected and refused" to "prevent or aide in preventing the commission of these wrongs." The Court agrees that Plaintiff has not asserted any facts showing that the person who held the highest appointed position at the University of California had actual knowledge of, or was even aware of, a decision not to reappoint a lecturer on the UC Merced campus, much less of any alleged conspiracy. For this reason, the § 1986 claim against Yudof is dismissed with leave to amend.

**Statute of Limitations: Seventh COA (42 U.S.C. 1986)**

"Section 1986 imposes liability on every person who knows of an impending violation of section 1985 but neglects or refuses to prevent the violation." *Karim–Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 626 (9th Cir.1988). A violation of section 1986 thus depends on the existence of a valid claim under 1985. *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1040 (9th Cir. 1990).

The statute of limitations for claims brought under 42 U.S.C. 1986 is one year. *McDougal v. County of Imperial*, 942 F. 2d 668, 673 (9th Cir. 1991); 42 U.S.C. §1986. This time period excludes

14

all the acts alleged in the complaint, FAC, and SAC. This claim is therefore dismissed without leave to amend.

**Statute of Limitations: Eighth COA (42 U.S.C. 1981)**

The eighth claim, for violation of § 1981, is asserted against Oschner, Hothem, and Zanzucchi. Section 1981 of the Civil Rights Act of 1866 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens." *Johnson v. Lucent Technologies Inc.,* 653 F.3d 1000, 1005–08 (9th Cir.2011) (quoting 42 U.S.C. § 1981(a)). A § 1981 claim is sufficient to withstand a motion to dismiss if it alleges that plaintiff suffered discrimination in employment on the basis of race. *Jones v. Bechtel,* 788 F.2d 571, 574 (9th Cir.1986). Analysis of a § 1981 employment discrimination claim follows the same legal principles as those applicable in a Title VII discrimination case. *See Metoyer v. Chassman,* 504 F.3d 919, 930 (9th Cir.2007) (setting forth § 1981 discrimination requirements).

A § 1981 claims also has a two-year statute of limitations. *See Lukovsky v. City and County of San Francisco,* 535 F.3d 1044, 1048 (9th Cir.2008); *see also Jones v. R.R. Donnelley & Sons, Co.,* 541 U.S. 369, 380–83, 124 S.Ct. 1836, 158 L.Ed.2d 645 (2004).

For the same reasons stated with respect to Plaintiff's 1983 claim, this claim is dismissed with leave to amend. As individual defendants Oschner, Hothem, and Zanzucchi were first named in the FAC filed July 31, 2013, they may only be held answerable to violations of this statute occurring on or after July 31, 2011.

**Punitive Damages Barred Against Public Entity**

Plaintiff concedes that he may not recover punitive damages from the Regents as a matter of law. Opp., 6:4-7. Accordingly, his request for punitive damages against the Regents is dismissed. Should Plaintiff amend the SAC, he should omit this request.

///

///

///

**CONCLUSION**

It is **HEREBY RECOMMENDED** that:

1) The First COA (referencing "Title VII … and 42 U.S.C. 1981, 1983, [1985], and 1986 and the California Fair Employment and Housing law") be dismissed **with** leave to amend.

2) The Third COA (NIED) be dismissed **without** leave to amend.

3) The Court **deny the motion** to dismiss the Fifth COA (§ 1983), as limited above.

4) The Sixth COA (§ 1985) be dismissed **with** leave to amend.

5) The Seventh COA (§ 1986) be dismissed **without** leave to amend.

6) The Eighth COA (§ 1981) be dismissed **with** leave to amend.

7) The Tenth COA (violations of FEHA) be dismissed **with** leave to amend.

8) Plaintiff's request for punitive damages against the Regents be **dismissed**.

If Plaintiff opts to amend, his Third Amended Complaint should meet the same requirements that applied to his previous complaint: it should be brief, but must state facts supporting allegations as to the harm caused by each defendant. Fed. R. Civ. P. 8(a); *Iqbal* at 678. Plaintiff is advised that an amended complaint supersedes the original complaint. *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997); *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987). In addition, an amended complaint must be "complete in itself without reference to the prior or superseded pleading." Local Rule 220. Plaintiff is warned that "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." *King* at 567 (citing *London v. Coopers & Lybrand*, 644 F2d 811, 814 (9th Cir. 1981)); *accord Forsyth*, 114 F.3d at 1474. Finally, Plaintiff **may not plead new causes of action**, but may only revise causes of action that he pled in the previous complaints.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. **Within fourteen (14) days of service of this recommendation**, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge

will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

DATED: 4/3/2014  /s/ SANDRA M. SNYDER
UNITED STATES MAGISTRATE JUDGE